8355

PERKINS v. PHILADELPHIA LIFE INS. CO.

INSURANCE—WAIVER—FORFEITURE.—Writing a letter to the insured after the date for the payment of a premium, that the insurer would reinstate the policy if the insured would perform certain stipulated conditions by a certain time and if insured was then living, an offer by the beneficiary to comply within the time but after the death of the insured is not a compliance, nor is the letter a waiver of the forfeiture under the stipulations in the policy.

MR. CHIEF JUSTICE GARY *dissents.*

Before ROBERT ALDRICH, J., Chesterfield, November, 1911. Affirmed.

Action by L. A. Perkins against Philadelphia Life Insurance Co. Plaintiff appeals.

*Messrs. Stevenson & Prince* and *M. J. Hough,* for appellant, cite: *There was evidence of waiver:* 71 S. C. 359; 57 S. C. 16. *Forfeitures are strictly construed, and very slight evidence of waiver is admissible:* May on Ins. 170, 367; 1 S. C. 24; 29 Bar. 552; 46 S. C. 79; 79 S. C. 494; 78 S. C. 402; 71 S. C. 356; 96 U. S. 234, 572; 106 U. S.

30; 159 Fed. 408; 142 Fed. 709; 52 S. C. 227; 78 S. C. 402. *Estoppel to insist on forfeiture:* 3 Cool. Brief on Ins. 2700.

*Messrs. Geo. K. Laney* and *Edward McIver,* contra.

October 30, 1912. The opinion of the Court was delivered by

MR. JUSTICE WATTS. Eugene H. Perkins, the husband of appellant, was a holder of a life insurance policy in the respondent company of date January 1, 1910. The appellant was named therein as the beneficiary in the sum of $5,000. In consideration of the sum of $15.50 the amount insured by the policy was carried as term insurance from August 24, 1909, to date on which the policy came into binding force and effect. The first premium, however, under the specific terms of the policy was due January 1, 1910, to cover the year 1910, and the succeeding premiums were to fall due on the first day of January each year thereafter. The first premium was received and accepted by the insurer on January 17, 1910, though the policy provided that there should be no period of grace allowed on the first premium. Upon all subsequent premiums by the terms of the policy a grace of one month was allowed. The premium for 1911 was not paid on or before January 1, 1911, the date it was due, and the company on January 5, 1911, mailed to the insured a notice calling attention to the fact that the premium remained unpaid and offering in accordance with the terms of the grace clause contained in the policy to accept it if paid on or before February 1, 1911. This notice was signed by the comptroller and contained the provision that the company did not agree to send similar notices stating future expiration periods. On January 28, 1911, a similar notice was mailed to the insured. The period of grace expired without the premium being paid, and after its expi-

ration, on February 2, 1911, the company, by its comptroller, wrote the insured and referred to the policy as having lapsed for *nonpayment* of premium, but offered to reinstate it upon the performance by the insured of certain stipulated conditions on or before February 10, 1911, and if insured was living at that time. This letter and offer was received by the beneficiary on February 4, 1911, some few hours after the death of the insured, which occurred about 5 o'clock a. m. of the same day. After the death of the insured, the appellant found the policy with the notice mailed him on January 5, 1911, and tendered to the respondent company a cashier's check for the amount alleged to be due for premiums and requested of them blanks for the proof of death of the insured.

The check was mailed to the respondent company on February 14, 1911, and received by them and by them returned to the appellant on February 16, 1911, with a notice that they refused to accept it and a claim that the policy had lapsed for *nonpayment* of premiums and could not be reinstated. Thereupon suit was instituted and was tried before his Honor, Judge Robert Aldrich, and a jury in November, 1911, and at the close of testimony, his Honor directed a verdict for the defendant, and the appellant appealed and alleges error on the part of his Honor in so directing a verdict for the defendant. The exceptions, seven in number, practically raise but one question, and that is the question of waiver, which is the only question in the case. This question, as is always the way in each case, must be determined by its own peculiar facts. Appellants seem to base their argument of waiver principally on the letter of February 2, 1911. This letter expressly advised the insured that his policy had lapsed for *nonpayment* of premium, and offered to reinstate the policy on certain conditions, which it is not contended were complied with. These conditions were that if the insured did not feel inclined to pay the premium past due in cash, that the company would accept three notes from

him for $20 each, due in three, six and nine months, and check for $18.20, provided the settlement was received by them at their office on or before February 10, 1911, and provided the insured was living on that date.

To hold under the facts here that there was a legal waiver would make it unsafe for a creditor to ever extend a debt or indulge a debtor. Certainly an offer to reinstate on certain conditions, as was made in this case, cannot be regarded as a waiver, especially if the conditions are not complied with, and there is no contention here that the conditions were complied with. The letter of February 2, 1911, of the company to the insured by no twisting of words or strained construction could be regarded as a waiver of the forfeiture. The policy itself provides by its own terms that it shall lapse for *nonpayment* of premiums one month after January 1, 1911. Hence, it was a dead contract and not a live one after February 1, 1911. This becomes obvious if we ask the question, If not on February 1, 1911, then on what subsequent date can the policy be regarded as dead for nonpayment of premium? The policy itself contains no provision within itself whereby its life can be prolonged unless the company by virtue of a new agreement, understanding, or contract agrees to reinstate it. No such new agreement was ever entered into. If the policy was not dead on February 1, 1911, then on what future date did it or could it become so? No means exist fixing such a date. Suppose insured had neglected to pay the premiums for six months after February 1, 1911, who would contend that the policy would have survived until August 1, 1911? Yet every reason for declaring it dead on August 1, 1911, applies with equal force to February 1, 1911. A policy of the old-fashioned kind, without the one month's grace for the payment of the premium, would have terminated on January 1, 1911. It is a most liberal provision of this particular policy issued by the respondents which gives the insured one month's latitude to pay his premium during which the policy

is maintained in equal force and vigor as if the payment had been made on or before January 1, 1911.  Certainly this liberal provision in the policy ought not to be twisted and tortured into a further imaginary allowance of time not stated or limited in any way in which insured should be at liberty not to pay any premium at all, if he lived, and at the same time be fully covered by insurance if he died.  The mere statement of such a one-sided suggestion is its own refutation.  The letter on February 2, 1911, in no way altered the existing situation or created any new rights in plaintiff until acted on by the insured or plaintiff in conformity with its terms.  One of the terms in said letter was the payment of a premium in a certain manner on or before February 10, 1911.  No attempt to do this was made until several days after that date.  Another term of the letter imposed the condition that when said premium was paid prior to February 10, 1911, the insured must then be living. This condition was not fulfilled, for the reason that insured had in the meanwhile died.  Therefore, the letter of February 2, 1911, in no way altered the situation previously existing, which was that the policy on the preceding day, February 1, 1911, had lapsed and was dead.  If nothing had been done at all by defendant after February 1, 1911, the case presented would have been an ordinary one of a policy lapsing.  To change this situation, it must be shown that the defendant through its proper officers did some act which would operate to revive a policy already dead. Defendant performed no act than to send the letter of February 2, 1911.

In the case of *Donald* v. *Life Insurance Company,* 4 S. C. 321, it was held that the policy was void for the non-payment of premiums according to its terms, and consequently the plaintiffs had no cause of action, and that the conditions of a policy of insurance as to the payment of annual premiums must be strictly complied with by the insured, or his policy will be void.  Chief Justice Moses

says in that case: "The determination of the case depended on the construction of the policy and of its conditions, which was the contract between the parties, and this was for the Court and not for the jury. Before entering on what really appears to us the merits of this contention, it may be satis- factory to refer to the position submitted on the argument in behalf of the respondents, which claims the existence of the policy at the death of the assured, by reason of the alleged payment of the premium in his lifetime. There is a distinction between a tender and actual payment itself. The former may sometimes so operate as to place the party making it in a position in which he may be entitled to the full benefit of some condition which was to avail, if within a certain time he made payment of the stipulated sum fixed by the agreement, but it cannot amount to full and com- plete satisfaction. Here the point relied on was, not that the payment of the required premium had been made, but the intention of the assured, by enclosing the money in a package, its direction to the general agent of the company, and its presentation after his death by Herrick and Lake amounted to a compliance with the stipulations on the per- formance of which the interest in the policy was preserved to the respondents. This raised a question of law. The facts from which the legal conclusion was drawn were not contested and presented a proposition purely for the judg- ment of the Court."

To give, however, to the respondents the full benefit of the acts through which they contend the policy was saved to them, for the purpose of argument, we will consider what would have been their effect if the assured had been living and claimed that his policy was still of force by virtue of the transactions which the respondents aver, he being dead, secure to them the benefit of the covenant. "The conditions annexed to a personal contract, like a policy of life insur- ance, must be performed according to the terms used, and the apparent intent of the parties, and are not satisfied by a

performance *cy pres.*" 3 Steph., N. P., 2072. Every warranty in the policy is a condition precedent, and the assured must aver and prove performance of it. It is held that a liberal construction must be given to such an instrument in seeking for the true intention of the parties, but if the terms leave no doubt of this, it must be enforced according to their plain meaning. The following extracts from the policy show so much of its conditions as is necessary for a proper understanding and decision of the case: "The company, in consideration of the first annual payment on the policy, continues the same in force from the 5th day of March, 1869, to the 5th day of March, 1870, and in consideration of the payment of the like sum in cash every twelve months as hereafter stated, and of the annual premium of eighty-six dollars and seventy-five cents, to be paid on or before the day of                in every year, during the continuance of this policy (or within thirty days thereafter, within the lifetime of the assured, when the payments are annual), do assure the life of David Lewis Donald, etc.; and it is also understood and agreed * * * or in case the said party contracting for this assurance shall not pay the said premium on or before the several days hereinbefore mentioned for the payment thereof, then, and in every such case, the said company shall not be liable for the payment of the sum assured, or any part thereof, and this policy shall cease and determine." The notice endorsed on the policy, which is made part of the contract, declares that "the premium is payable at the commencement of this risk in one or more payments as within expressed. If the assured desires to alter the mode of payments, application must be made to the company in writing for permission, which the company will grant at its discretion. The premiums are always due on the several days stipulated in the policy, and all risk to the company commences at the time of actual payment of the first premium, without regard to the date of the policy (unless otherwise stipulated in the policy), and

continues until the day named in the policy for the payment
of the next premium, at 12 o'clock noon, and no longer,
except that thirty days' grace are allowed, as within pro-
vided, where payments are *annual,* but no.days of grace on
less than annual premium."

"No premium will be received by the company continuing
any risk after the day named in the policy for the payment
of such premium, unless the insured is in perfect health, and
the risk continued at the entire option of the company, and
no payment of premium is binding on the company unless
the same is acknowledged by a printed receipt, signed by
the president or secretary, or actuary of the company.
Agents are not authorized to bind the company by the issue
of policies or permits, nor give receipts for the renewal of
premiums; neither are they authorized to waive forfeiture
or make, alter or discharge contracts."

The policy expired on the 5th of March, 1871, and the
risk could be extended beyond that time only "at the entire
option of the company." The days of grace terminated on
the 4th of April following—the assured died on the 7th.
The appellants well contend "that if he died on the 3d of
that month, and the amount of premium had been tendered
on that day, the company would not have been bound to
accept it." The liability of the company depended on the
death of the assured during the continuance of the risk.
This ended on the 5th of March, 1871, and the extension
within the time fixed as days of grace was subject entirely
to the will of the company.

The principles decided in *Simpson et al.* v. *The Accidental
Death Insurance Company,* 88 E. C. L. 257, apply to the
case here, and the facts are analogous. The premium there
was payable on January 22nd in each year, and by one of the
conditions endorsed on the policy "the premium was to be
paid 21 days from the day on which the same should first
accrue or become due, and that, provided the same should

be from time to time paid within such space of 21 days, the policy should not be void, notwithstanding the happening before the expiration of such space of 21 days of the event or events upon the happening whereof the amount secured by the policy should, according to the terms thereof, become payable." By another condition it was provided "that if the premium should be unpaid for 21 days next after it should become due, the policy should be absolutely void." And it was further (fourthly) provided "that in every case in which a new premium should become payable, the directors should be at liberty to terminate the risk by refusing to accept such premium." A. paid the premiums to the year 1855. On 22nd January, 1856, one of the premiums, payable as in the policy mentioned, became due. February 1, 1856, he died from accident which happened to him on January 27th preceding. It was *held* that there was nothing in the conditions to enable his executors to pay the premium after his death, and that if they had tendered it within the 21 days the company would not have been bound to accept it; that the policy was, by reason of the nonpayment of the premium within the terms of the policy and conditions, absolutely void, and that the company were not estopped from denying the payment; that neither the plaintiffs (executors) nor the assured (had he been living) would have had an absolute right to keep the policy alive by payment or tender of the premium within the 21 days, the fourth condition giving the directors the option of refusing to continue it or not at their pleasure. The principles which governed this decision had been applied in *Tarleton et al.* v. *Stanforth et al.,* 5 T. R. 695, to a case of insurance against loss by fire, and in *Want and Gaskein* v. *Blunt et al.,* 12 East. 183, to one arising out of a policy of life insurance. The reasoning in the cases leave nothing for further elucidation, and are conclusive on the points made here in behalf of the respondents.

We do not think, after a careful consideration of all the exceptions, that any of them should be sustained.

Judgment affirmed.

MESSRS. JUSTICES HYDRICK *and* FRASER *concur.*

MR. CHIEF JUSTICE GARY *dissents.*

MR. JUSTICE WOODS *did not sit.*