## 9808

### RABB v. NEW YORK LIFE INS. CO.

#### (93 S. E. 711.)

1. INSURANCE — WAIVER OF FORFEITURE — AUTHORITY OF AGENT. — Notwithstanding Civ. Code 1912, sec. 2712, providing that any person doing any of the things therein mentioned, including the receipt, collection, or transmission for any premium of insurance, shall be held to be acting as the agent of the company, the act of an insurer's soliciting agent in receiving and receipting for a premium on a policy after it had lapsed for nonpayment of such premium did not prejudice the right of the insurer to insist on the forfeiture, where the agent, to the knowledge of the insured and the beneficiary, had no authority, real or apparent, to receive the premium, and the application and policy provided for payment of the premium on delivery of a receipt signed by specified officers, and provided that the agent taking the application had no authority to make, modify, or discharge contracts or waive any of the company's rights or requirements, since the statute does not restrict the power of insurance companies to place reasonable limits upon the authority of their agents.

2. INSURANCE — WAIVER OF FORFEITURE — DEMAND OF PREMIUM—CONDI-
TIONS.—Where a life insurance policy provided that, at any time after
any default, the policy might be reinstated on presentation of satis-
factory evidence of insurability and payment of all arrears of pre-
miums with interest, the default in the payment of a premium due
July 30th was not waived by sending the regular notice of a quar-
terly premium to become due on October 30th, "provided said policy
be then in force," which notice further provided that payment must
be made only in exchange for the company's receipt signed by the
president at the home office or the company's branch office, especially
where the insurer had written insured urging him to have the policy
reinstated, and telling him that, if the evidence of insurability was
found satisfactory, he would be reinstated, since there was merely
an offer to waive the forfeiture upon condition with which insured
did not comply.

Before HON. E. R. McIVER, special Judge, Charleston,
April, 1916.   Reversed.

Action by Elva M. Rabb, as administratrix, against the
New York Life Insurance Company.   Judgment for plain-
tiff, and defendant appeals.

*Messrs. Mordecai & Gadsden & Rutledge* and *James H.
McIntosh,* for appellant, cite: *As to proof of performance
of conditions precedent:* Code Civ. Proc., sec. 212; 14 Ency.
Pl. & Pr. 628, 629; 102 N. Y. 312.   *Payment of premiums:*
2 Joyce Ins., par. 1099; 19 Abb. Pr. 217; 3 Robb. 232; 41
Conn. 399; 28 N. J. Eq. 167; 12 Kan. 475; 30 Ohio St.
240; 96 S. C. 375.   *Conditions subsequent:* 100 S. C. 162;
77 S. C. 294; 46 S. C. 541; 94 S. C. 138; 37 S. C. 117; 42
S. C. 14; 43 S. C. 26; 70 S. C. 75.   *Waiver:* 54 S. C. 375.
*Agency:* Civil Code, secs. 2711, 2712; 22 Cyc. 1446. *Waiver
by agent:* 29 S. C. 560; 83 S. C. 262; 88 S. C. 221; 72 S. C.
361; 78 S. C. 395; 81 S. C. 548; 95 S. C. 1; 90 S. C. 168;
76 S. C. 248; 99 Pac. 537; 70 S. E. 157; 156 Pac. 304; 69
S. C. 303.

*Messrs. Hagood & Rivers,* for respondent, cite: *As to
payment of premium:* 96 S. C. 375.   *Presumptions and bur-*

*den of proof:* 25 Cyc. 925, 927; 88 S. C. 37; 159 Fed. 408. *Nonsuit:* 63 S. C. 567; 1 Hill 382. *Waiver of forfeiture:* 88 S. C. 38; 103 S. C. 288. *Limitations on powers of agent:* 90 S. C. 175; 57 S. C. 365; 93 S. C. 406; 88 S. C. 40; 80 S. C. 272, 273; 97 S. C. 380, 381.

September 20, 1917.

The opinion of the Court was delivered by MR. JUSTICE HYDRICK.

Defendant appeals from judgment for plaintiff on two policies insuring the life of plaintiff's intestate. The defense was that the policies lapsed on August 30, 1913, for nonpayment of the quarterly premiums due July 30, 1913, 30 days grace being allowed by the policies for payment of premiums.

Plaintiff relied on waiver of the forfeiture by the acceptance of the premiums by J. W. Burmester, defendant's local soliciting agent, on October 16, 1913, the day before insured died, and while he was sick and the giving of his receipt therefor. This receipt was admitted over defendant's objection.

In his application, which was made part of the contracts, insured agreed "that the agent taking this application has no authority to make, modify, or discharge contracts, or to waive any of the company's rights or requirements." The policies contained stipulations to the same effect, and provided that "all premiums are payable on or before the date due, at the home office of the company, or to an agent of the company upon delivery of a receipt signed by the president, a vice president, a second vice president, a secretary or the treasurer of the company, and countersigned by said agent;" and that, "at any time after any default, upon written application by the insured and upon presentation at the home office of evidence of insurability satisfactory to the com-

pany, this policy may be reinstated, upon payment of arrears of premiums with interest thereon at the rate of five per centum per annum."

On July 3, 1913, the company's regular premium notices, one for each policy, were mailed to the insured, notifying him that the premiums would be due on July 30, 1913, and that payment must be made at the home office in New York, or to the company's branch office in Savannah, Ga. Thereafter, on the 8th, 15th and 22d of August, the cashier of defendant's branch office in Savannah mailed to the insured letters calling his attention to the nonpayment of the premiums due July 30th, and notifying him that the time of grace would expire on August 30th; and, on August 30th, mailed him a notice that the policies lapsed on that date for nonpayment of premiums.

Mr. Burmester testified that on October 16th a Mr. Hughes, who was his nephew and a friend of the family of the insured, came to his office, and brought the notices of premium to become due on October 30th, and paid him $72.66, for which he gave the receipt; that he told Mr. Hughes, at the time, that his receipt was absolutely "no good," because he had no authority to receive money or to give receipts therefor on behalf of the company; but he gave the receipt because Mr. Hughes insisted on his doing so, saying that he wanted it to show to Mr. Fleming, a brother-in-law of Mr. Rabb, that he had paid the money; that he (Burmester) had solicited the policies and had taken Rabb's application therefor, and had paid to the company the first premium for Rabb on his promise to repay him later, and had kept the policies in his possession until October 16th, when he delivered them to Mr. Hughes; that, when Hughes came to his office to pay the money, he knew and told witness that Mr. Rabb was then sick (he died the next day), and Mr. Hughes asked him if the policies were in force, and witness replied that he hoped they were, but "we would have to see later." The uncontradicted evidence

showed that Burmester had no authority, real or apparent, to receive the renewal premiums or to waive the forfeiture.

Defendant moved for a directed verdict on the ground that the uncontradicted evidence showed that the policies had lapsed and that there was no evidence of waiver. The Court refused the motion and submitted the issue of waiver to the jury, and charged them, in effect, that, although the insurer and insured had expressly agreed, and so stipulated in their contract, that the soliciting agent had no authority to receive and receipt for renewal premiums, or to waive a forfeiture for nonpayment thereof, nevertheless the statute (section 2712, Civil Code 1912) operated upon the contract so as to annul that provision, and impose liability upon the company for the act of the agent, notwithstanding he had no authority to do the act to the knowledge of the insured.

To ascertain the legislative intent, we may consider the original statute from which the section in question was taken, which shows clearly that the legislature intended thereby to regulate the conduct of insurance agents, and persons who assumed to act as such, with regard to their relation to the State and the public, as well as the companies they represent; and, in order to subject such agents to the penalties prescribed by the act, and to the legal consequences of their assuming to act as such, whether with or without authority, it was enacted that any person who does any of the things mentioned in that section "shall be held to be acting as the agent of the company for which the act is done or the risk taken."

Plainly, one of the purposes of the act was to regulate insurance agents, by requiring them to be licensed, and by subjecting them to penalties for violations of the insurance laws, and to prevent evasion thereof by the agents saying they were acting as agents of the insured and not of the insurance companies. If the statute had not defined who should be held to be agents of insurance companies, as it

did, any person in the State might have solicited insurance for a foreign company not licensed to do business here, or for one whose license had been revoked, without himself having a license as an insurance agent, and without subjecting himself to liability for violation of the insurance laws, by simply proving that he was acting as agent of the insured and not of the insurer.

Equally plain is the purpose to thwart the practice of insurance companies of inserting in their policies a stipulation that he who was, in fact, their own agent, employed and paid by them, shall be held to be the agent of the insured, so as to avoid the just consequences of notice or knowledge given to their agents affecting risks, and of acts done by their agents within the scope of their authority, real or apparent, under the general principles of the law of agency.

And as it is often difficult for the insured to prove the agency, the evidence of which is usually in possession of the agent and the insurance company, both of whom are usually hostile to the insured, it was no doubt intended, also, that the doing of the acts mentioned should be at least *prima facie* evidence of the fact of agency. It was so held in *Madden v. Ins. Co.*, 70 S. C. 301, 49 S. E. 857, where Chief Justice Gary, speaking for the Court, said:

"When a person does any of the acts enumerated in section 1810 (now 2717) of the Code of Laws, the presumption is that he was the agent of the insurance company, *but such presumption is subject to rebuttal.*" (Italics added.)

But the lawmakers only said that any person doing the acts mentioned "shall be held to be acting as the agent of the company for which the act is done or the risk taken." They did not add, as it would have been easy to do if that had been their intention, "and such company shall be bound by his acts;" nor did they say that it shall be held that he was acting within the scope of his authority. The language of the act cannot be so interpreted without violating both ele-

mentary rules of construction and fundamental principles of right and justice.

There is nothing in the section which denies or restricts the power of insurance companies to place reasonable limitations upon the authority of their agents. Such limitations are necessary to the successful conduct of the business, and the power to make them is recognized in other statutes regulating the business, and in numerous decisions of this Court rendered since the passage of section 2712, in some of which that section was considered. In many, perhaps in most of them, the question at issue was the scope of the authority of the agent, real or apparent. That question could not have arisen if it had been thought that the statute removed all limitations upon the authority of such agents. In the recent case of *Rowe v. Ins. Co.,* 90 S. C. 168, 72 S. E. 1018, the right of such companies to make rules or regulations for the conduct of their business, which shall be binding upon those who deal with them with knowledge thereof, is recognized.

The act of Burmester in receiving and receipting for premiums on these policies was not only without authority, real or apparent, but also in violation of his contract with and instructions from defendant, and the contract between the insured and defendant, all of which was known to the insured and his beneficiary. Therefore, the receipt and what was done by reason of it cannot, in the absence of ratification of the act by the company (of which there is no evidence), be allowed to prejudice its rights. It was error to admit it in evidence and to instruct the jury with regard to it, as was done.

As tending to show waiver, plaintiff also relied upon the fact that, after the forfeiture had been incurred, defendant sent insured its regular premium notice of the premiums to become due on October 30th. That does not tend to show waiver. In the first place, plaintiff overlooks this important condition in that notice, "provided

said policy be then in force," and the further notice that payment must be made "only in exchange for the company's official receipt, signed by the president, and countersigned by the person to whom payment is made," and that "payment must be made to the premium cashier at the home office, or to the cashier of the company's branch office, Germania Bank Building, Savannah, Ga.," and other conditions plainly set forth therein.

Besides, on August 30th, defendant's branch office had already written insured the letter hereinbefore referred to, telling him that his policies had lapsed for nonpayment of the premiums due July 30th, and urging him to have them reinstated, inclosing an application for reinstatement, and stating that, if it was signed and returned with the July premiums and interest thereon, it would be forwarded to the home office, and, "if the evidence of insurability is there found to be satisfactory," a notice of reinstatement would be mailed to him, and offering to suggest some plan whereby he might be enabled to carry the policies.    Insured knew by the terms of his policies, to which his attention had been repeatedly called in the previous letters sent him, that, if he failed to pay the premiums within the month of grace, he would be required "to furnish evidence of insurability satisfactory to the company, in addition to the payment of premium and interest."    The company wanted to waive the forfeiture, and urged insured to accept its offer to waive it, but upon the conditions specified, which were fair and reasonable.    But the insured did not comply with the conditions upon which the company offered to waive the forfeiture, and, therefore, the offer cannot avail his beneficiary. *Parry v. Ins. Co.,* 95 S. C. 1, 78 S. E. 441.

Judgment reversed.