Donald F. Laustrup, Assignee of Sherman Ringe, and Julian Ringe, Curator of Estate of Clarence Ringe, a Minor, v. Bankers Life Company, a Corporation, Appellant.—No. 39838.—196 S. W. (2d) 260.

Court en Banc, July 8, 1946.

Rehearing Denied, September 9, 1946.

*Fordyce, White, Mayne, Williams & Hartman, Walter R. Mayne* and *Joseph Renard* for appellant; *Emory N. Nourse* and *Creech & Creech* of counsel.

*Jonathan Edwards Clarke* for respondents.

CLARK, C. J.—Suit to recover death benefits under an insurance policy for $5,000.00 on the life of Louis Ringe, who died on April 8, 1932. In May, 1945, judgment for plaintiff was appealed by defendant to the St. Louis Court of Appeals. That court adopted an opinion, but later entered an order withdrawing it and transferring the case to the Supreme Court because the amount involved, including interest, places jurisdiction here.

The case was submitted to the trial court on an agreed statement of facts, pertinent provisions of which are: policy issued June 20, 1929, calling for quarterly premiums of $57.00 due on or before the 20th day of September, December, March and June of each year; insured paid the quarterly premiums up to and including the one due on September 20, 1931; insured died on April 8, 1932; among other provisions, the policy contained the following:

"*This Policy* is based upon annual premiums, but, beginning with any policy year, instead of the annual payments, the Company will accept semi-annual or quarterly payments in advance, at the rates given in the margin hereof, but no payment shall continue the Policy in force beyond the date when the next payment is due, except as hereinafter provided. Each payment made, whether annual, semi-annual or quarterly, shall be considered as indicating the manner in which subsequent payments are to be made unless otherwise requested

in advance by the Insured in writing to the Company, at its Home Office. Any payments required to complete the premiums for the current policy year in which death occurs shall be deducted from the insurance payable.''

''Thirty-one days of grace without interest will be allowed in payment of any premium after the first; the policy to remain in force for its full amount during such period. If death occurs within the period of grace, the unpaid premium for the then current policy year shall be deducted from the amount payable hereunder.''

''Upon maturity of this Policy its legal surrender will be required, and any indebtedness to the Company under this Policy will be deducted in any settlement thereunder.''

''At any time within five years after default in payment of any premium, or thereafter by special arrangement, if this policy has not expired and has not been surrendered to the Company, it may be reinstated upon presentation at the Home Office of evidence of the insurability of the Insured satisfactory to and approved by the Company, and the payment of all premium arrears with interest thereon at the rate of six per cent per annum and payment or reinstatement of any indebtedness which existed at the time of such default with interest at the rate of six per cent per annum.''

After the expiration of the grace period, to wit, on January 20, 1932, insured applied for, and defendant granted an extension of time for payment of the premium due on December 20, 1931, the extension to run to February 20, 1932; this application was made on a form furnished by defendant and insured paid $5.00 at the time he applied for the extension. The application provided that if the extension be granted the insurance would continue in force until the extended date without days of grace; also that the compensation for the privilege of extension was one dollar per one thousand dollars of insurance per month.

On March 8, 1932, defendant wrote insured as follows:

''BANKERS LIFE COMPANY

Gerard S. Nollen, President

Des Moines, Iowa

March 8, 1932

Policy No. 845307 3-Q-76
Amount due $52.26
Date due 2/20/32
Louis J. Ringe
200 South Kingshighway
Saint Charles, Mo.
Dear Mr. Ringe:

Permit us to call attention to the expiration of premium extension on the above numbered policy.

This you have evidently overlooked. Immediate action is important as the policy has now lapsed because of non-payment of the amount due.

To apply for reinstatement, please send us a remittance covering the amount due together with the enclosed Application for Reinstatement properly filled out and signed. This will receive our prompt consideration.

If you cannot take such action NOW please advise us promptly, stating your reasons. We desire to serve you to the full extent of our ability. If additional ▆▆ time is required we may be able to make suitable arrangements. In any event we should appreciate hearing from you.

Don't bother about writing a formal letter—just write on the reverse side of this sheet and mail it to us in the enclosed business reply envelope (no postage required).

Yours very truly,<br>PREMIUM COLLECTION DEPT.

288-S-11

By (signed) R. Carter

RC:BS''

Insured answered on the reverse side of above letter as follows:
''Bankers Life Co.

Des Moines, Iowa.

Gentlemen:

In reply to reverse side of this letter will state on account of the tightness of money I was unable to meet payment of my premium account of my money being tied up in a closed bank and if you will agree to carry me until Sep. 1932 I may be able to pay up the premium if you can carry the writer he would appreciate it very much.

Very truly yours,<br>(Signed) Louis J. Ringe.''

On March 19, 1932, defendant wrote insured:
''Dear Mr. Ringe:

We have at hand your reply to our Premium Collection Department's letter of March 8, concerning your above numbered policy, which stands lapsed.

It will not be necessary for you to pay your premium in full at this time in order to apply for reinstatement. We will give consideration to your application to reinstate this policy and application for an extension of the time for payment of the premium due December 20, 1931, on an annual basis to September 20, 1932 upon receipt of the enclosed application for reinstatement blank filled out, dated and signed personally by you in the presence of a witness, together with the enclosed extension application dated and signed by you, and a remittance of $35.00.

We sincerely hope the extension arrangement will enable you to make prompt application to have this policy placed back in force and we are enclosing a business reply envelope which requires no postage.

Very truly yours,<br>CONSERVATION DEPARTMENT

MY

By (signed) DS''

Insured received the letter last quoted, but did not reply and made no payment or application for reinstatement.

On April 5 defendant mailed to insured a notice of premium due on March 20, 1932, which notice was received by insured on April 6. Among other things, the notice stated:

''CONDITIONS''

''Unless the premium specified in this notice shall be paid to the Bankers Life Company or its Collecting Agent as shown on the reverse side hereof, on or before the premium due date or within thirty-one days thereafter, the policy and all payments thereon will become forfeited and void except as to the right to a surrender value or a paid-up policy or other non-forfeiture provisions of the policy or as provided by statute.''

The policy record card kept by defendant contains the following notation in longhand: ''lapsed March, 1932.''

▮ Respondent advances two main contentions why we should affirm the judgment in his favor; first, that under its express terms the policy could not be forfeited for non-payment of a part of the December, 1931, quarterly premium until the date when the ''next payment is due'' plus days of grace ending April 21, 1932; second, that even though the policy be construed to contain such a forfeiture provision the same has been waived.

Respondent cites seventy-five cases, about equally divided between his two contentions. As to the first contention, beyond announcing abstract rules for construing insurance contracts, with which we agree, none of his citations are in point. In effect, respondent says that the policy provision ''no payment shall continue the policy in force beyond the date when the next payment is due, except as hereinafter provided,'' means that any payment, however small, will so continue the policy in ▮ force and that the payment of $5.00 for an extension had that effect. The terms of the policy completely refute the argument of respondent on this point. It says: ''This policy is based upon annual *premiums,* but no payment shall continue the policy in force beyond the date when the next payment is due, . . . Each payment made, whether annual, semi-annual or quarterly, shall be considered as indicating the manner in which subsequent payments are to be made . . . Thirty-one days of grace will be allowed in payment of any premium . . .'' The quoted language

clearly means that the payment of a *premium* (in this case a quarterly premium of $57.00) will continue the policy in force until the next premium date and cannot be distorted into meaning that the payment of $5.00 or $1.00 will so continue the policy or indicate "the manner in which subsequent payments are to be made." There is no merit in this contention of respondent.

The second contention of respondent deserves more discussion. Respondent says that defendant by its conduct led insured to believe that it waived the terms of the extension agreement and treated the December premium as having been paid by extending credit in lieu of cash payment. Further, respondent says that defendant's claim of forfeiture is inconsistent with its acts in (1) applying $5.00 cash as payment on December premium; (2) charging interest on the balance of the December premium to March 20; (3) sending notice of premium due March 20 and advising of days of grace; (4) marking its policy record card "lapsed March 1932."

After the expiration of the grace period for the December premium, insured applied for and was granted an extension to February 20, the extension agreement expressly reciting that it was without grace period. On March 8 the defendant advised insured that "the policy has now lapsed" and enclosed an application for reinstatement. Insured did not sign the application, but wrote defendant asking for credit until September. On March 19 defendant replied, again stating that the policy "stands lapsed" and offering to consider an application for reinstatement on specified conditions. Insured did not reply. Up to this point there is no doubt that the policy had lapsed for non-payment of the December premium as extended to February and insured so understood.

On April 5 defendant mailed insured a premium notice stating that unless a premium be paid within thirty-one days after March 20 "the policy and all payments thereon will become forfeited." The mailing of this premium notice and the marking of the policy card "lapsed March 1932" seem inconsistent with the prior letters of defendant that the policy had lapsed on February 20. Does this conduct on the part of defendant have the effect of restoring the lapsed policy to life? That, it seems to us, is the only real question on this appeal.

Respondent quotes extensively from Wilson v. Life Ins. Co., 233 Mo. App. 1006, 128 S. W. (2d) 319. That case involved many controverted issues of fact which distinguish it from the instant case, but the ruling on one important question is unfavorable to the respondent here. There, an application for reinstatement recited the policy had lapsed. The opinion states that this would "amount to a conclusive admission that said policy was without force or effect" except that the insured was a minor and his father, who made the application, had no authority to bind him.

In O'Donnell v. Ins. Co. (Mo. App.), 277 S. W. 973, two notes had been given by the insured for a full annual premium, the notes falling due before the due date of the next annual premium. The policy provided that a failure to pay any premium note when due would void the policy. The notes were not paid, but the insurance company continued to try to collect them, sent insured a notice of the next annual premium and, after insured's death, an officer in charge of the records of defendant admitted that the policy was still in force. The opinion properly holds that the policy had never lapsed.

In Murray v. Home Benefit Life Assn., 90 Cal. 402, 27 Pac. 309, the policy called for the payment of six assessments per year in stated amounts. After insured had defaulted in two assessments, the company still tried to collect them and sent him a notice of the due date of the next assessment. Eight days before his death he remitted the amount of the two assessments in arrears which the company refused to receive, but its president stated he would receive payment if tendered personally by insured. It was held there had been no lapse or forfeiture.

In Ray v. Ins. Co. (Ky.), 211 S. W. 736, insured gave a note for the first annual premium. The policy provided for forfeiture if the note was not paid when due. A small payment was made on the note, but it was not paid in full. The company retained the note, tried to collect it and mailed a notice of the next annual premium. Insured died within the grace period. The company claimed it had notified insured that the policy had lapsed, but this was denied. It was held that a forfeiture had been waived by retaining and trying to collect the note and by mailing notice of the next premium. The facts differ from those in the instant case in that here it is admitted that the defendant declared the policy lapsed and so notified the insured, but the Kentucky opinion does place much emphasis on the mailing of the premium notice. Other cases cited by respondent differ so widely from the instant case as to make it unnecessary to review them.

We see no merit in respondent's argument that defendant waived a forfeiture by (1) applying $5.00 cash as payment on December premium to March 20; (2) charging interest on the balance of the December premium to March 20. The basis of this argument is the letter from defendant to insured of March 8, 1932, stating that the policy had lapsed and offering to consider reinstating it *if* insured would pay $52.26 and sign the enclosed application. Insured did not accept the offer. Under the policy defendant could have required insured to pay the full amount of the past due premium with interest in order to reinstate the policy, and its unaccepted offer to permit payment of a smaller sum does not constitute an admission that the policy was still in force, in the face of the express statement in the offer that the policy had lapsed.

"Appellants seem to base their argument of waiver principally on the letter of February 2, 1911. ' This letter expressly advised the insured that his policy had lapsed for nonpayment of premium, and offered to reinstate the policy on certain conditions, which it is not contended were complied with . . . To hold under the facts here that there was a legal waiver, would make it unsafe for a creditor to ever extend a debt or indulge a debtor. Certainly, an offer to reinstate on certain conditions as was made in this case, cannot be regarded as a waiver, especially if the conditions are not complied with, and there is no contention here that the conditions were complied with.'' [Perkins v. Ins. Co. (S. C.), 76 S. E. 29.]

We place no importance on the fact that the policy card in defendant's files was marked "lapsed March 1932." This could not have induced insured to believe his policy was still in force. There was no evidence that insured knew of the existence of such a card or even that the marking was placed thereon before his death.

Mailing insured a notice of the March premium would be strong evidence that defendant regarded the policy as still in force, except for the fact that it had previously notified insured that the policy had lapsed. It had so notified him twice and clearly explained to him the method required to reinstate the policy. The policy required evidence of insurability and payment of premium arrears to reinstate and the application form sent to insured stated: "It is agreed that said policy is not and will not be restored to good standing unless and until this application for reinstatement is approved by the company after consideration by it of all factors usually considered by it in determining insurability when passing upon an original application for insurance." In this case, unlike some of those cited by respondent, the March premium notice was not sent while defendant, either by word or act, was claiming that the policy was still in force. It was sent after the policy had lapsed according to its terms and after insured had been so notified. We cannot hold that the mailing of the premium notice had the effect of reviving or reinstating the lapsed policy.

"Mailing notice of the regular quarterly premium due August 12, 1932, in compliance with the provisions of the statute, was but a routine matter, and did not have the effect of waiving the intervening forfeiture and reviving the policy." [Sellers v. Life Ins. Co. (N. C.), 171 S. E. 328. See also Rabb v. New York Life Co. (S. C.), 93 S. E. 711, and Curtis v. Prudential Co., 55 Fed. (2d) 97.]

The judgment of the trial court is reversed. All concur.