[No. B086722. Second Dist., Div. Seven. May 11, 1995.]

In re FIRST CAPITAL LIFE INSURANCE COMPANY in Liquidation.
CHARLES QUACKENBUSH, as Insurance Commissioner, etc., Plaintiff
and Respondent, v.
OMNICOR, INC., et al., Defendants and Appellants.

COUNSEL

Brouse & McDowell, John W. Solomon, Timothy J. Horner, Hawkins, Schnabel, Lindahl & Beck and Timothy A. Gonzales for Defendants and Appellants.

Daniel E. Lungren, Attorney General, Rubinstein & Perry, Karl L. Rubinstein, Dana Carli Brooks, Orrick, Herrington & Sutcliffe, Cynthia J. Larsen, Thomas J. Welsh and Amy L. Landers for Plaintiff and Respondent.

## OPINION

JOHNSON, J.—This is an appeal from a judgment denying a claim for life insurance benefits from a company under conservatorship. We affirm.

### FACTS AND PROCEEDINGS BELOW

In January 1989, First Capital Life Insurance Company (hereafter First Capital) issued a $500,000 policy on the life of Howard Newell, the president of Omnicor, Inc. The policy entered a late period November 26, 1991, for nonpayment of the required premium. First Capital sent an initial late notice to Omnicor in November 1991. A second late notice was sent in December 1991 advising Omnicor the policy would lapse on January 26, 1992, if the premium was not paid by that date.

Omnicor responded to the notices by sending a check for $1,000 to First Capital. This amount was insufficient to prevent the policy from lapsing. The check was returned by First Capital. On January 7, 1992, First Capital sent a letter to Omnicor and Mr. Newell advising them of the minimum payment required, the reinstatement procedures and the payment deadline of January 26, 1992.

In the meantime, Omnicor and Mr. Newell applied for a replacement policy from Southland Life Insurance Company on January 24, 1992. Two days later, January 26, 1992, the First Capital policy lapsed for nonpayment of premiums. On January 28, 1992, First Capital sent a notice informing Omnicor and Mr. Newell of the lapse.

In April 1992, Mr. Newell was diagnosed with lung cancer.

Omnicor received a late notice dated July 6, 1992, from First Capital stating the policy on Mr. Newell was in a grace period which would end unless the premium stated was received from Omnicor prior to August 3, 1992.

Omnicor telephoned its insurance agent, Jerry Lyke, on July 16, 1992, to inquire about the First Capital policy and inform him it was accepting First Capital's offer to maintain coverage for Mr. Newell. Omnicor also advised Mr. Lyke it was sending a check in response to the notice. Mr. Lyke telephoned First Capital and questioned a hotline representative about the late notice. Immediately, the representative realized a discrepancy in the notice and ordered the file referred to her supervisor.

The next day, July 17, 1992, First Capital's customer service representative telephoned Mr. Lyke. She informed him the First Capital policy had lapsed in January 1992 and Mr. Newell would have to complete the reinstatement form to obtain coverage by First Capital. Among other things, this would require Mr. Newell to provide proof of insurability. Mr. Lyke advised Mr. Newell and Omnicor of the reinstatement procedures after obtaining this information from First Capital.

First Capital received Omnicor's premium payment on July 23, 1992. Within a week, First Capital returned the payment to Omnicor and advised it the late notice was sent in error, there was no policy in force and the policy could only be reinstated through normal reinstatement procedures previously explained.

Mr. Newell died on July 31, 1992. First Capital was informed of Mr. Newell's death by a letter dated August 7, 1992, which also resubmitted the premium initially sent July 16, 1992. On August 25, 1992, First Capital again informed Omnicor and Mrs. Newell the premium would not be accepted for the reasons previously given.

On May 14, 1991, the Insurance Commissioner of the State of California (hereafter Commissioner) was appointed as conservator of First Capital. In

December 1992, Omnicor and Mrs. Newell submitted official forms for death benefits with supporting documentation to the Commissioner pursuant to the claim procedures established by the Los Angeles County Superior Court.

The Commissioner rejected the claim on October 8, 1993. The trial court affirmed the Commissioner's rejection of the claim on June 23, 1994.[1]

## DISCUSSION

### I. *Standard of Review*

█ Interpretation of an insurance contract, as with any written document, is a question of law which we review de novo. (*Devin* v. *United Services Auto. Assn.* (1992) 6 Cal.App.4th 1149, 1157-1158 [8 Cal.Rptr.2d 263]; see also *Estate of Shannon* (1965) 231 Cal.App.2d 886, 891 [42 Cal.Rptr. 278].) However, determination of whether there is a contract is a question of fact requiring deference to the trial court. (*Parsons* v. *Bristol Development Co.* (1965) 62 Cal.2d 861, 866 [44 Cal.Rptr. 767, 402 P.2d 839].) In such a case, we will defer to factual findings made by a trial court when there is oral or written evidence to support such findings. (*Denna* v. *Red River Lumber Co.* (1941) 47 Cal.App.2d 235, 238 [117 P.2d 689].)

The issue is whether Mr. Newell's life insurance policy with First Capital was in force when he died July 31, 1992. This is a factual question. Thus, great deference will be given to both the Commissioner's and the trial court's findings.

### II. *The Late Notice Sent July 6, 1992, Was an Offer.*

Omnicor argues the late notice sent July 6, 1992, by its terms constitutes an offer to enter into a contract for life insurance. An offer is a " 'manifestation of willingness to enter into a bargain, so made as to justify another person in understanding that his assent to that bargain is invited and will conclude it.' " (*Leaseway Distribution* v. *Admin. Services* (1988) 49 Ohio App.3d 99 [550 N.E.2d 955, 961], citing Rest.2d Contracts, § 24.)[2]

The trier of fact must determine "whether a reasonable person would necessarily assume . . . a willingness to enter into contract." (*Leaseway*

---

[1] In accordance with section 1032 of the Insurance Code, when a claim is rejected by the Commissioner, a claimant may apply to the court in which the liquidation proceedings are pending within 30 days for an order to show cause why the claim should not be allowed. On November 3, 1993, claimants filed an order to show cause in accordance with Insurance Code section 1032.

[2] Whether there is a contract is determined under Ohio law as stipulated by the parties.

*Distribution* v. *Admin. Services, supra,* 550 N.E.2d at p. 961.) It could appear to a reasonable person First Capital was offering continued insurance coverage if the premium was paid by the specified lapse date. The notice contains a manifestation of willingness to continue coverage if Omnicor sent the required payment. It informs the reader of the notice of the offer and the amount needed to accept. Furthermore, it expresses the mode of acceptance. Thus, the late notice sent July 6, 1992, may be viewed as an offer to continue a contract with First Capital for life insurance.

III. *Omnicor Accepted the Offer to Enter Into a Life Insurance Contract With First Capital.*

Acceptance is the "manifestation of assent to the terms thereof made by the offeree in a manner invited or required by the offer." (Rest.2d Contracts, § 50.) Omnicor contends sending the premium on July 16, 1992, in response to the offer in the July 6, 1992, late notice constituted acceptance of the First Capital offer for continued life insurance coverage.

Omnicor accepted the offer in the manner invited. It sent the amount required by the late notice by the date required. Thus, there was acceptance of the offer.

IV. *Despite the Offer and Acceptance, There Was No Enforceable Contract Because There Was No Meeting of the Minds Between Omnicor and First Capital.*

■ A meeting of the minds is essential to the formation of a valid contract. (1 Corbin on Contracts (1963 ed.) § 107, p. 478.) If there is no meeting of the minds due to the offeror's mistake, a court will not find a contract was formed unless the offeror's conduct was such that the other party would not be misled by the mistake. If the proponent of the contract had reason to know of the mistake, the mistaken party can avoid the contract. (Rest.2d Contracts, § 153, com. e.) ■ As we explain below, although Omnicor accepted the offer in the manner invited, given the knowledge Omnicor possessed it could not reasonably have believed First Capital intended an offer.

As previously noted, a late notice was sent by First Capital July 6, 1992. From the terms of the notice, it appeared as if the policy was still in force and would remain in force until the end of the grace period, August 3, 1992. However, Omnicor received notice of the pending lapse of the policy twice in late 1991 and again in January 1992. Those notices informed Omnicor the policy would lapse for nonpayment January 26, 1992. First Capital also informed Omnicor and Mr. Newell of the procedures required for reinstatement after the policy lapsed. A final lapse notice was sent January 28, 1992,

after the policy was forfeited for nonpayment of the premium. At no time did Omnicor rely on the First Capital coverage. In fact, Omnicor and Mr. Newell purchased a replacement policy in expectation of the impending lapse of the First Capital coverage.

Omnicor had many reasons to know the July 1992 notice was a mistake. Upon receipt of the July 6th notice Omnicor contacted its agent, Mr. Lyke, to inquire about the notice and inform him of its acceptance. On July 16, 1992, Mr. Lyke made further inquiries regarding the offer to continue the life insurance policy for Mr. Newell.

First Capital responded July 17, 1992, to the inquiries stating the policy had previously lapsed and required reinstatement conforming to the required procedures. This information was relayed to Omnicor. At no time did Omnicor or Mr. Newell attempt to comply with the required reinstatement procedures explained by both the January 26th notice and by Mr. Lyke.

The facts known by Omnicor and Mr. Newell provided them abundant reason to believe the July 6th late notice was sent by error. Thus, the trial court correctly concluded there was no meeting of the minds and no contract formed by the parties.

V. *The Policy Purchased by Omnicor and Mr. Newell in 1989 Was Forfeited for Nonpayment of Premiums in January 1992.*

Omnicor argues First Capital's conduct constituted a waiver of its right to declare a forfeiture of the policy. Courts are liberal in construing transactions in favor of avoidance of a forfeiture. (*Miraldi* v. *Life Ins. Co. of Va.* (1971) 48 Ohio App.2d 278 [356 N.E.2d 1234, 1236].) Insurance policies are strictly construed against the insurer who wrote the provisions which bind the parties. In the case of a forfeiture clause, the terms must be clear and unambiguous to be valid. (*Ibid.*)

The policy in the present case states: "If you do not pay, by the end of the grace period, enough premium (or repay enough loan) to cover the monthly deductions for the grace period plus the month following the grace period, this policy will end."

Such language leaves no room for misunderstanding by the insured or the insurer. The insured had the opportunity to read and understand the language in the policy before purchasing the policy. The purchase of the policy indicates the insured agrees to be bound by the terms in the policy, including the forfeiture clause. (See *Miraldi* v. *Life Ins. Co. of Va.*, *supra*, 365 N.E.2d at p. 1236.)

The First Capital policy lapsed for nonpayment in January 1992. First Capital was under no contractual obligation or legal requirement to accept a premium payment subsequent to the time for payment specified in the policy. (*Gwinn* v. *John Hancock Mut. Life Ins. Co.* (1944) 142 Ohio St. 510 [53 N.E.2d 515, 520].) Payment after the policy lapsed could not reinstate the policy without compliance with the reinstatement procedures.

The First Capital policy stated it could only be reinstated upon:

"written request within five years after the end of the grace period and before the maturity date;

"satisfactory proof that the insured is insurable at the original underwriting class and rating factor;

"payment of enough premium or repayment of enough loan to meet the monthly deductions for the grace period and for the month during which reinstatement occurs and for one subsequent month, plus, if lapse occurred prior to the end of the policy year 3 and reinstatement is to occur after the end of policy year 3, an additional amount equal to the surrender charge as of the reinstatement date."

Omnicor sent in the required payment to cover the premium, but did not submit the required proof of insurability.

Besides having to pay the interest on the premium past due, Omnicor would have to provide proof of Newell's insurability. In July 1992 Omnicor would have been unable to provide such proof because earlier that year Mr. Newell was diagnosed with lung cancer. It would have been impossible for Omnicor to reinstate the policy without a waiver of the reinstatement requirements.

A waiver will be found if it can reasonably be inferred from the facts. (*Miraldi* v. *Life Ins. Co. of Va.*, *supra*, 356 N.E.2d 1234, 1236.) The facts in the present case show the policy lapsed in January for nonpayment of premiums. Omnicor and Mr. Newell obtained a replacement policy and did not believe the First Capital policy to be in force. The July 6th notice said the policy would lapse and no longer in force if the premium was not received by August 3, 1992. This notice was in conflict with the November, December, and January notices, as well as the policy itself. The policy stated it would lapse 61 days after the monthly processing date if the payment was not received in that time. There is no ambiguity as to when coverage was forfeited. (See *Reddick* v. *Globe Life Ins. and Acc. Ins. Co.* (Fla. 1992) 596

So.2d 435, 437.) Under these facts, there was no waiver of the reinstatement procedures for Mr. Newell's policy.

In *Laustrup* v. *Bankers Life Co.* (Mo. 1946) 196 S.W.2d 260, the court held the mailing of a premium notice by the insurer to an insured after the policy had lapsed according to its terms did not revive or reinstate the lapsed policy. (See also *Talley* v. *Teamsters, Chauffeurs, etc.* (1976) 48 Ohio St.2d 142 [357 N.E.2d 44, 46] [mistake of clerical staff in mailing the wrong pamphlet was at most harmless error].) In *Laustrup, supra*, a life insurance policy lapsed for nonpayment of premiums due. The insured was notified of the lapse and the reinstatement procedures. The insured argued the charging of interest on the balance of the past due premium waived the forfeiture of the policy. The court determined the mailing of a premium notice would be strong evidence the insurer regarded the policy as still in force, except for the fact the insured was previously notified the policy had lapsed. (196 S.W.2d at p. 254.) Thus, the court found no policy was in force at the time of the death.

Omnicor and Mr. Newell would have been required to pay both the last premium with the interest, as well as the next amount due in order to reinstate the policy. To permit payment of a smaller sum does not constitute an admission the policy was still in force in the face of the express statement in the policy and in the reinstatement procedure. (*Laustrup* v. *Bankers Life Co, supra*, 196 S.W.2d at p. 264.)

Omnicor and Mrs. Newell contend the July 6th notice was a waiver of forfeiture because the premium was increased. The case on which they rely, *Sherwood* v. *Midland Nat. Life Ins.Co.* (Utah 1977) 560 P.2d 329, is not on point. In *Sherwood*, the insured failed to make a premium payment by the due date or within the grace period provided by the policy. At the end of the grace period, the insurer sent the insured a notice which provided in relevant part, "Your grace period expired . . . but this *offer* gives you an additional fifteen days to pay . . . ." (*Id.* at p. 330, italics added.) The court held this "offer" granted the insured an extension of time to pay the premium, therefore no forfeiture of the policy occurred. (*Id.* at p. 331.) However, as we have previously held, the July 6th notice in the present case was not intended and could not be reasonably interpreted by plaintiffs as an offer to continue the existing policy.

Here, the only act Omnicor claims to constitute a waiver of forfeiture is the July 6th late notice. The late notice is essentially the same as a premium notice. Both inform the insured a payment is required to continue the coverage provided by the policy in question. However, the mere sending of

a notice of the next premium due does not constitute such an act to waive forfeiture. (See *Quirk* v. *Columbian Nat. Life Ins. Co.* (Mo. 1948) 207 S.W.2d 551, 557.) Thus, without other affirmative action by First Capital, there was no waiver of the forfeiture of Mr. Newell's life insurance policy.

Though Omnicor and Mrs. Newell issued a check for the amount stated in the July 6th notice, First Capital promptly returned the payment and explained again in the July 30th letter the policy was no longer in force and required reinstatement. The communication sent to Omnicor was a routine notice. There was no indication First Capital intended to waive the previous forfeiture for nonpayment. Therefore, there was no waiver of the reinstatement procedures and no policy in force at the time of Mr. Newell's death.

### DISPOSITION

The judgment is affirmed.

Lillie, P. J., and Woods (Fred), J., concurred.