MUTUAL LIFE INS. CO. OF NEW YORK
v. ASBELL.

TRAVELERS PROTECTIVE ASS'N OF
AMERICA v. SAME.

Nos. 5597, 5598.

Circuit Court of Appeals, Fourth Circuit.
August 2, 1947.
Writ of Certiorari Denied Dec. 8, 1947.
See 68 S.Ct. 221.

S. Augustus Black, of Columbia, S. C. (Pinckney L. Cain, Thomas, Cain & Black; Louis W. Dawson, of New York City, and Maurice P. Phillips, of St. Louis, Mo., on the brief), for appellants.

Christie Benet (Jeff D. Griffith, of Saluda, S. C., and J. B. S. Lyles, of Columbia, S. C., on the brief), for appellee.

Before SOPER and DOBIE, Circuit Judges, and CHESNUT, District Judge.

SOPER, Circuit Judge.

These suits under the two life insurance policies and the beneficial certificate in suit involve only the question whether the death of the policy holder resulted from bodily injury effected solely through external, violent and accidental means independently and exclusively of all other causes. The suit against the life insurance company is based on two policies for $5,000 and $2,000 respectively, each of which contains the usual double indemnity clause in case of death caused solely by accident. The company paid the face amount of the policies before suit, so that only the double indemnity is in issue. The suit against the association is based on a certificate of membership entitling the named beneficiary to $5,000 in case of the death of the member from such a cause. The District Judge overruled defendants' motions for directed verdicts, and submitted the cases to the jury which found in favor of the named beneficiary. Motions for judgments notwithstanding the verdicts were also overruled, and these appeals followed.

The legal question involved therefore relates solely to the sufficiency of the evidence to justify the submission of the cases to the jury. The family physician, who was the chief witness for the plaintiff, made out the death certificate and stated therein that the principal cause of death was "heart attack; probably coronary occlusion", and that the contributing cause was "he fell on the pavement and fractured both bones of left forearm". The certificate also contained the statement that death was due to "coronary occlusion or thrombosis and accidental injury". This witness testified at the trial that if the deceased had had a perfectly normal heart, he would not

have had the attack of coronary thrombosis which brought on his death; but that he had a condition favorable to the onset of such an attack; that the accident brought the attack on, and that the heart condition and the accident both contributed to the fatal result.

Other uncontradicted medical testimony shows that in January, 1942, the deceased was treated for two weeks in a hospital for coronary thrombosis, a disease of the heart, which is not necessarily fatal but is caused or accompanied by an arteriosclerotic condition which persists and gives rise to further attacks. The deceased completely recovered from the attack of January, 1942, but because of that attack, submitted to periodic medical check-ups or examinations in the succeeding years of which the last prior to the accident was in November, 1945, and these examinations indicated that his condition was excellent. Accordingly, after his recovery in the early part of 1942, he resumed his ordinary activities.

On December 6, 1945, he slipped on a banana peel on the sidewalk, fell heavily and broke his left arm. He suffered severely from the pain and the shock which accompanied the accident. An operation was deemed desirable, and inquiry was made whether it could be safely performed in view of his previous heart condition. The doctors thought it safe and it was performed, but the patient continued to suffer from the shock and five days later, he experienced severe pains in the region of his heart. His suffering was relieved, but after his return to his home, he suffered another heart attack, and on December 29, he died. All the medical witnesses agree that if the deceased had not fallen, he would not have died; and that the fall was not the sole cause of death but that the pre-existing heart condition was at least a contributing factor.

Against this array of evidence, certain circumstances are offered which it is contended are sufficiently weighty to indicate that the insured never suffered from a heart attack or hardening of the arteries prior to the accident. Thus it is pointed out that the deceased, except during the early part of 1942, led an active and vigorous business life in the town of Ridge Spring where he resided, and also supervised three nearby farms. His family physician testified in one part of his evidence that the heart trouble from which the patient died was caused by the shock of the accident, and that if it had not been for the fall, he would not have died. This physician also said that he had no personal knowledge of the heart attack in 1942 but that it had been reported to him, and that he had not disputed the diagnosis. The physician who attended the deceased at the time of the heart attack in 1942, and examined him thereafter, said that he had completely recovered from that attack and that until the time of the accident his condition was excellent.

We do not think that this testimony upon which the plaintiff relies presents a substantial basis for the submission of the case to the jury. Certain portions of the testimony of the family physician and of the physician who attended the deceased in 1942, when isolated from the rest of their evidence, have some tendency to indicate that the deceased had no abnormal heart condition at the time of the accident in 1945, but when the testimony of each of these medical men is read as a whole, it is perfectly clear that each of them held the opinion that in 1945 the deceased was afflicted with an abnormal heart condition which made him more susceptible than a person in normal health to another heart attack, and that in this instance, the defective heart condition was revived by the pain and shock of the fall, so that both physicians came to the conclusion that the death was the result of the combined effect of both causes. This conclusion is compelled not only by the testimony of the physician who testified for the defendants with respect to the heart attack in 1942, but also by the testimony on behalf of the plaintiff by the family physician who gave the death certificate and expressed the opinion indicated above.

■ Under the established rule the defendant's motion should have been granted. In Gunning v. Cooley, 281 U.S. 90, 94, 50 S.Ct. 231, 233, 74 L.Ed. 720, the court said: "A mere scintilla of evidence is not enough to require the submission of an issue to the jury. The decisions establish a more rea-

sonable rule 'that in every case, before the evidence is left to the jury, there is a preliminary question for the judge, not whether there is literally no evidence, but whether there is any upon which a jury can properly proceed to find a verdict for the party producing it, upon whom the onus of proof is imposed.' Improvement Company v. Munson, 14 Wall. 442, 448, 20 L.Ed. 867; Pleasants v. Fant, 22 Wall. 116, 122, 22 L. Ed. 780." See also Galloway v. United States, 319 U.S. 372, 389, 63 S.Ct. 1077, 87 L.Ed. 1458; Hartman v. Baltimore & Ohio R. Co., 4 Cir., 89 F.2d 425, 426.

■ The judgments will be reversed and the cases will be remanded to the District Court with direction to enter judgments for the defendants in accordance with Rule 50(b) of the Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c. Cone v. West Virginia Pulp and Paper Co., 67 S.Ct. 752.

Reversed and remanded.