**WRIGHT v. GRAIN DEALERS NAT. MUT. FIRE INS. CO.**

No. 6160.

United States Court of Appeals
Fourth Circuit.

Argued Nov. 15, 1950.

Decided Dec. 28, 1950.

Arthur W. Woltz, Newport News, Va., and George Cochran Doub, Baltimore, Md. (Charles H. Gordon, Hampton, Va., Jones, Blechman & Woltz, Newport News, Va., and Marshall, Carey, Doub & Mundy, Baltimore, Md., on brief), for appellant.

E. L. Ryan, Jr., Norfolk, Va. (White, Ryan & Holland, Norfolk, Va., on brief) for appellee.

Before PARKER, Chief Judge, and SOPER, Circuit Judge, and CHESNUT, District Judge.

SOPER, Circuit Judge.

This suit was brought by Wilson Henry Wright, a citizen of Virginia, against Grain Dealers National Mutual Fire Insurance Company, a corporation of Indiana, to recover damages in the sum of $3,010 to an automobile trailer truck which was wrecked in an accident on May 23, 1949 and was covered by a collision, fire and theft policy issued to the plaintiff by the Insurance Company. The case was tried to a jury upon a single issue—whether the policy had been canceled by the Insurance Company on January 5, 1949 prior to the accident. At the conclusion of the evidence the defendant made a motion for a directed verdict and the judge reserved decision and submitted the case to the jury which found a verdict for the plaintiff for $3,010. Thereafter the defendant moved that the verdict be set aside and that judgment be entered in its favor, and after further consideration, this motion was granted and the plaintiff appealed.

The policy contained the following provision:

"Cancelation. This policy may be canceled by the insured by surrender thereof or by mailing to the company written no--

tice stating when thereafter such cancelation shall be effective. This policy may be canceled by the company by mailing to the insured at the address shown in this policy written notice stating when not less than five days thereafter such cancelation shall be effective. The mailing of notice as aforesaid shall be sufficient proof of notice and the effective date and hour of cancelation stated in the notice shall become the end of the policy period. Delivery of such written notice either by the insured or by the company shall be equivalent to mailing.

"If the insured cancels, earned premiums shall be computed in accordance with the customary short rate table and procedure. If the company cancels, earned premiums shall be computed pro rata. Premium adjustment may be made at the time cancelation is effected and, if not then made, shall be made as soon as practicable after cancelation becomes effective. The company's check or the check of its representative mailed or delivered as aforesaid shall be a sufficient tender of any refund of premium due to the insured."

Evidence on behalf of the policy holder established the issuance of the policy and the loss, and indicated that he had not canceled the policy and had not received notice of cancelation from the company. Evidence on behalf of the company indicated that notice of cancelation was mailed to the plaintiff by the issuing agency more than four months before the loss occurred. In passing upon the motion for judgment *n. o. v.* the District Judge said: "The evidence of mailing the notice of cancelation by the defendant in accordance with the terms of the policy is direct and without contradiction. There is no denial that such

notice was mailed and the oral testimony showing such mailing is corroborated by the Post Office receipt. While the plaintiff contends that the lack of evidence of receipt of the notice raises a presumption that it was not mailed, it is my view that under the terms of the policy contract failure to receive the notice has no bearing on the case since it was specifically agreed that the mailing should constitute proof of notice. To hold otherwise would, in effect, be undertaking to change the terms of the contract to provide that a notice must be *received* rather than *mailed*."

In our view, this construction of the cancelation provisions of the policy was correct and the judgment of the defendant must be sustained since the evidence was such as to leave no reasonable doubt that the notice of cancelation was actually mailed.[1]

The insured was engaged in the long-haul trucking business and in the Open Air Market business at 1925 Kecoughton Road, Hampton Virginia. Next to Open Air Market the insured also conducted a restaurant. There were four places of business at this address and other persons, as well as himself, received mail at his market. Usually the carrier left the mail at the market if it was open; otherwise he would slip it under the door.

Beginning in 1940 the policy holder had a general running account with A. M. Deal, an insurance agent who did business under the name of Mutual Underwriters and represented the defendant and other insurance companies. From time to time the policy holder purchased from Deal policies covering fire, theft and collision insurance and also public liability and personal damage insurance on his trailer-truck. He

---

1. " * * * when, on the trial of the issues of fact in an action at law before a Federal court and a jury, the evidence, with all the inferences that justifiably could be drawn from it, does not constitute a sufficient basis for a verdict for the plaintiff or the defendant, as the case may be, so that such a verdict, if returned, would have to be set aside, the court may and should direct a verdict for the other party." Slocum v. N. Y. Life Ins. Co., 228 U.S. 364, 369, 33 S. Ct. 523, 525, 57 L.Ed. 879; See also Gunning v. Cooley, 281 U.S. 90, 93, 50 S.Ct. 231, 74 L.Ed. 720; Pennsylvania R. Co. v. Chamberlain, 288 U.S. 333, 343, 53 S.Ct. 391, 77 L.Ed. 819; Mutual Life Ins. Co. v. Asbell, 4 Cir., 163 F.2d 121. The test is not whether the judge would be inclined in the exercise of discretion to grant a new trial but whether, independently of discretion, he would be bound to grant a new trial if the verdict were against the moving party. Begert v. Payne, 6 Cir., 274 F. 784, 788.

also carried fire insurance on certain buildings in Newport News. His account was charged with premiums on policies issued, and credited with payments on account and with dividends. On June 12, 1948 he purchased a fire, theft and collision policy on his trailer-truck in suit and the premium was charged to his account which then showed a debit balance of $379.20. On September 12, 1948 he purchased a public liability property damage policy thereon, as required by the state law, and his account then showed a debit balance. Thereafter until the end of the year a number of unsuccessful efforts were made by the insurance agency to collect this balance. At Christmas time 1948, the truck business was slow and Wright was not doing any contract hauling. According to the testimony of Charles B. Spencer, an employee of the insurance agent, Wright directed him to cancel both policies since he intended to sell the truck, and it was understood that the unearned premiums would be applied to Wright's account. Unless both policies were canceled the amount of unearned premiums returnable to Wright would have been insufficient to square his account. On the other hand Wright testified that he decided to give up public hauling and to confine the use of the truck to his personal business and therefore directed Spencer to cause the public liability policy, which in accordance with the statute was on file with the State Corporation Commission at Richmond, to be canceled; but he did not direct the cancelation of the policy in suit and desired to retain it for the protection of the vehicle while it was on his lot. Both policies were in fact canceled at the instance of the company and when this was done the unearned premiums exceeded the insurance by $4.20, and this credit was increased by a dividend of $15.21 to the sum of $19.41. Wright received notice from the State Corporation Commission that the public liability policy had been canceled. He retained the other policy in his possession and the small balance in his running account was retained by the agency until after the present controversy arose.

The uncontradicted evidence of the mailing of the notice of the cancelation of the fire, theft and collision policy, to which the judge referred in his opinion, included testimony of employees and records of the agency, and also a certificate of mailing from the United States Post Office at Newport News. Spencer testified that after his conversation with Wright at Christmas he gave orders to employees of the agency to issue a cancelation notice in triplicate in accordance with the usual procedure for non-payment of premiums, the original notice to be mailed to the insured, a copy to be mailed to the company, and a copy to be retained by the agency; and he produced from the company's files a carbon copy of a cancelation notice on a printed form bearing date January 4, 1949 addressed to Wright's Open Air Market, in which name the policy was written, at the correct address, to the effect that the policy would be canceled at midnight, January 10, 1949. The notice contained the printed signature of the defendant company by A. M. Deal, agent, in typewriting. At the bottom of the notice was a printed form of certificate to be filled out on behalf of the agency to the effect that the signer had personally mailed the notice of cancelation and had received from the United States the receipt thereto attached. The signature "Mutual Underwriters by" was annexed in typewriting but the signature of the person who made the certificate was omitted. Pasted to the copy of the notice was a post office receipt, with a canceled 1¢ stamp affixed, which acknowledged that on January 5, 1949 the Post Office at Newport News had received from Mutual Underwriters one piece of ordinary mail addressed to Wright's Open Air Market at the correct address. On the back of the copy of the notice were stamped the words "Received January 8, 1949 Grain Dealers National Fire Ins. Co. Indianapolis 7, Ind.", indicating that the copy of the notice of cancelation was mailed to and received at the home office of the company on January 8, three days after the original was mailed to the insured.

Mrs. A. M. Deal, the wife and an employee of the insurance agent, testified that she typed the notice on January 4, 1949 and mailed the original at the Post Office on that day and received the described receipt. She identified pencil notations in her handwriting on the copy of the notice which showed $152.05 as the amount of earned premiums, $109.65 as the amount of the returned premium and $15.21 as the dividend on the canceled policy. These credits correspond with credits in the ledger account of this agency. This form was customarily used by the company to effect cancelation when the policy was not secured from the policy holder. An employee of the Post Office Department at Newport News verified the issuance of the post office receipt.

The ledger account of the plaintiff was credited with $109.65 on the policy in suit on January 21, 1949 and with $274.92 on the public liability and property damage policy on January 31, 1949, which, together with a dividend of $15.21, left the balance to the credit of the account of $19.41.

These were the circumstances that were found so compelling by the District Judge as to require a directed verdict for the defendant. That conclusion is attacked by the appellant on a number of grounds. It is pointed out that since cancelation is an affirmative defense, the burden of proof rests upon the Company to sustain it; and it is emphasized that the evidence as to the actual receipt of the cancelation notice is conflicting. On the one side there was the testimony of the insured and his wife that the notice was not received and the testimony of another insurance agent that he subsequently wrote a new public liability policy for Wright and was told by him that he had a fire, theft and collision policy. On the other side there was the testimony of two witnesses for the company that after the accident the insured admitted that he had received the cancelation notice. But we are concerned in this case not with the receipt but the mailing of the notice; and as we held in Seaboard Mut. Ins. Co. v. Profit, 4 Cir., 108 F.2d 597, 126 A.L.R. 1105, such a cancelation provision in an insurance policy does not require both mailing and delivery in order to effect a cancelation. In that case the evidence as to whether the notice of cancelation was actually delivered was conflicting; but the evidence of mailing of notice, which, as in the pending case, included a receipt from the post office, was very strong so that the fact of cancelation was assumed in the opinion of the District Court and was not disputed on appeal.

There are many cases, where actual notice is a prerequisite of effective cancelation, in which it is held that the presumption of the receipt of notice arising from the mailing thereof may be rebutted by testimony of the policy holder that the notice was not received; and when this occurs, the question is for the jury. 20 Am.Jur., Evidence § 201; 31 C.J.S., Evidence, § 136. It has also been held in some cases that a jury question arises under like circumstances where mere mailing of the notice under the policy is sufficient to effect a cancelation. 46 C.J.S., Insurance, § 1678; 31 C.J.S., Evidence, § 136; Keller v. Provident Life & Acc. Ins. Co., 213 S.C. 339, 347, 49 S.E.2d 577; Wilson v. Frankfort Marine, Accident & Plate Glass Ins. Co., 77 N.H. 344, 91 A. 913; Gilbert v. Malan, 231 Mo.App. 469, 100 S.W.2d 606. We think, however, that the conclusion reached by us in Seaboard Mut. Ins. Co. v. Profit, supra, is sound; and that when the determining factor is mailing rather than receipt of notice, such undisputed and convincing evidence of mailing as is found in this case is not rebutted merely by evidence that the notice was not actually received. If this were not so, there would be little difference in practical effect between the two types of policy, and the uncertainty sought to be avoided in the form of contract before us would still prevail. See Boyle v. Inter Ins. Exchange of Chicago Motor Club, 335 Ill.App. 386, 82 N.E.2d 179; Aetna Ins. Co. v. Aviritt, Tex.Civ.App., 199 S.W.2d 662.

The decision in Seaboard Mut. Ins. Co. v. Profit, supra, also answers the contention that the notice of cancelation was insufficient since it was mailed on January 5th to take effect on January 10, 1949, and therefore did not comply with the policy

requirement that five days should elapse between the date of the notice and the effective date of cancelation. The rule is that a notice defective in point of time be given effect after the lapse of the full time described in the policy.

■ Next, it is contended that the defense of cancelation must fail because the defendant offered no proof that the agency had authority to cancel the contract. This contention might well be serious on appeal under different circumstances; but in the instant case it does not present a relevant issue. Lack of authority to cancel was not asserted by the policy holder until his reply brief was filed in this court. In the trial court the agent's authority was not questioned. Indeed the jury were instructed by the District Judge that the only question before them was whether the insurance was in effect at the time of the accident; and that under the policy it might be canceled by the company by mailing notice of cancelation to the insured and that the company need not show that the notice was received because mere mailing of the notice was sufficient. Upon the completion of the charge the attorneys for the parties were invited, out of the presence of the jury, to state their objections if they had any but the attorneys for both sides stated that they had none. The lack of authority was not raised so far as the record discloses during the argument on the motion for a judgment *n. o. v.* Consequently under the established rule it may not be raised now for the first time. See Reconstruction Finance Corp. v. Sun Lumber Co., 4 Cir., 126 F.2d 731. H. E. Wolfe Construction Co. v. Fersner, 4 Cir., 58 F.2d 27.

■ There are no exceptional circumstances to justify a departure from this rule in this case. The wide discretion generally accorded to policy writing agents in writing and canceling contracts of insurance and in extending credit for the payment of premiums, in order to serve both parties to the insurance contract, is well known. In Virginia the right of the agent to cancel an insurance policy in liquidation of an indebtedness to the insurance agency is recognized in Hamburg-Bremen Fire Ins. Co. v. Browning, 102 Va. 890, 894, 48 S.E. 2.

■ The same reasoning disposes of the contention that the fact of cancelation is open to doubt because the balance of the unearned premium which was due the insured after his indebtedness was paid was not sent him by the agency. On this point the judge charged the jury that they were not concerned with the unearned premiums in any way and that the non-payment thereof did not enter into their deliberations. No objection to this instruction was made.

■ Evidence tending to show that the policy was canceled for non-payment of premiums is relied on to vitiate and invalidate the cancelation. It is contended that on October 5, 1948 the premium on the policy in suit was fully paid and that the policy was canceled in order that the unearned premium thereon might be used to defray the indebtedness of the insured for the premium on the public liability and property damage policy which was taken in another company; and it is urged that the cancelation of the policy in suit for this purpose was beyond the power of the agent and therefore invalid. Insofar as this argument depends upon the state of the account between the insured and the defendant is concerned, it must fall because a careful examination of the evidence indicates clearly that at no time after the issuance of the policy in suit was the policy holder out of debt to the insurance company, and that on October 5, 1948 he owed the company $80.37.[2] Nor it there any merit in the suggestion that the cancelation of the policy in suit for the purpose of payment of the insured's indebtedness to the agency was beyond the authority of the

2. On October 4, 1948 the insured paid to the agency the sum of $136.63, and got a receipt showing that this sum was credited upon premiums due on the public liability policy. If this payment had been credited against the old balance of $80.37, it would have paid the balance due on the premium on the fire and collision policy. It was however, necessary to cancel both policies in order to discharge the indebtedness to the company for non-payment of premiums.

agency. This contention, like the argument that the defendant offered no proof of the general authority of the agency to cancel the policy, must fall because it was raised for the first time in this court and because the plaintiff in the trial court in effect conceded that the only issue for a decision was whether the notice of cancelation had been mailed.

Finally, various features of the cancelation notice are stressed in the effort to show that it was so deficient in detail and in meaning as to require a submission of the case to the jury. It is pointed out that the carbon copy of the notice of cancelation produced in evidence is signed only in typewriting in the name of the agent and that the place for personal signature is left blank, and also that the carbon copy of the certificate of mailing, which forms part of the company's printed form, is signed only by Mutual Underwriters, the trade name of the agency, in typewriting, and that the place for the personal signature is left blank.

Again it is shown that the certificate of the Post Office which is attached to the carbon copy of the notice does not identify the contents of the notice but merely states that a letter was mailed by the agency to the insured on January 4, 1949. Therefore it is urged that the notice may have referred not to the policy in suit but to the public liability policy which was admittedly canceled.

These considerations of themselves seem to us insufficient to weaken the force of the positive verbal and record testimony produced by the defendant. It is of little or no moment that the names of the pesons who signed the cancelation notice and certified to its mailing on behalf of the company are left blank in the office records in view of the fact that even if the original notice did not identify these individuals, it nevertheless gave unmistakable notice to the insured that the policy had been canceled. Nor is it reasonable to infer that the cancelation notice referred to the public liability policy. The latter was retained in the custody of the State Corporation Commission in accordance with the Virginia Compulsory Insurance law. It is conceded that Spencer was directed to cancel this policy and that he gave written notice of cancelation to the Commission and that on January 12, 1949 the insured received a letter from the Commission notifying him that the policy had been canceled as of February 5, 1949. The insured himself by letter also authorized the Commission to cancel his authority to operate the equipment. That there could have been no confusion as to the policy, to which the notice of cancelation from the agency to the insured referred, is shown by the fact that the carbon copy retained by the agency not only contained the number of the policy in suit but also pencil notations of the amounts of the earned and unearned premium thereon.

The judgment of the District Court is affirmed.