| 82 | 923 |
| 88 | 784 |
| 88 | 1026 |

## Richmond.

## Home Insurance Co. v. Gwathmey.

### February 17th, 1887.

### Absent, Lewis, P.

1. Insurance Contracts—*Construction.*—The same rules of construction which apply to other contracts apply to these. The policy is to be construed according to its terms. There can be no resort to parol evidence except in case of latent ambiguity.

2. Fire Insurance—*Policy construed—Double insurance—Contribution—Case at bar.*—Policy issued to warehouseman, limits liability to loss affecting assured's interest in the goods, not to exceed that interest, nor the sum named in policy; and provides that goods on storage be separately insured. Depositors of such goods insured them in a different company. After loss by fire, insurer of depositors claimed that insurer of warehouseman contribute ratably to their losses—

Held:
> Insurer of warehouseman is not liable for loss to the goods in storage. It is not a case of double storage and contribution.

Error to judgment of corporation court of city of Norfolk, rendered August 3d, 1885, in an action wherein W. W. Gwathmey & Co., for use of Battle, Bunn & Co., and Everett Bros., Gibson & Co., are plaintiffs, and The Home Insurance Company is defendant. This was an action on a fire insurance policy for contribution as on a double insurance. The verdict and judgment were that defendant pay plaintiffs the sum of $2,110.73, with interest from March 17th, 1885, and their costs.

At the trial defendant excepted to several rulings of the court, and to the judgment obtained a writ of error and *supersedeas.*

Opinion states the case.

*Tunstall & Thom,* for the plaintiffs in error.

*Walke & Old,* for the defendant in error.

LACY, J., delivered the opinion of the court.

This action is upon a policy of insurance by the assured, commission merchants and licensed warehousemen, for the benefit of owners of merchandise on storage in their warehouse and destroyed by fire. The said depositors had other insurance of their own, taken out by them, to cover, and more than covering, the entire value of all the goods stored by them in the warehouse; but their insurers, claiming that as the said warehousemen had insurance on their warehouse, and their own goods therein, greater than the value of their own losses, the insurers of the said warehousemen, of whom the appellant company is one, were compellable to ratably contribute to the losses of the said depositors; and upon that ground refused to settle in full with the said depositors for their losses until they had exhausted their legal rights and remedies against the appellant company and others, the insurers of the warehousemen. The appellant company having refused to recognize any such demand upon them, the suit was brought by the warehousemen, upon the requisition, for the benefit, and at the costs of the said depositors, disclaiming for themselves all of their losses by the fire, and all of their own claims under the policy sued on having been paid. The case was tried in the said corporation court of Norfolk city, and judgment was rendered for the plaintiffs, for the benefit of the depositors, against the

appellant company, for their due contributory rate, upon the principle that they were bound for contribution, the insurance being double upon the goods destroyed, and greater than their entire value. From this judgment the case is here by writ of error.

The whole question here is upon the construction of the policy sued on. The principles of interpretation applicable to contracts of insurance are the same as those which obtain in the case of other contracts. The same rule of construction which applies to other instruments applies also to these. They are to be construed according to the sense and meaning of the terms used, and if these are clear and unambiguous, parol evidence will not be admitted to contradict, vary, or to explain them. Their terms are to be understood in their plain, ordinary, and popular sense, unless they have generally, in respect to the subject-matter, as by the known usage of trade, acquired a peculiar sense, distinct from the popular sense, rendering it necessary to resort to extrinsic proof in order to determine in which sense they are used, and so to explain their ambiguity; or unless the context evidently points out that they must, in the particular instance, and in order to effectuate the immediate intention of the parties, be understood in some special and peculiar sense. Lord Ellenborough, in *Robertson* v. *French*, 4 East. 135.

As was said by Lord Abinger, in *Cornfoot* v. *Fowke*, 6 Mees. & W. 358: "A policy of insurance is a contract, and is to be governed by the same principles as govern other contracts. Its language is to receive a reasonable interpretation. Its intent and substance, as derived from the language used, should be regarded." There is no more reason for claiming a strict, literal compliance with its terms than in ordinary contracts. Full legal effect should always be given to it, for the purpose of guarding the company against fraud and imposture. Beyond

this, we would be sacrificing substance to form; following words rather than ideas. Nelson, C. J., in *Turley* v. *North American Fire Ins. Co.*, 25 Wend. 374. Indeed, a moment's reflection will render it apparent, says a learned writer, that there is nothing about an agreement about insurance intrinsically more sacred or inviolable than in an agreement about any other subject-matter.

In a case in the Supreme Court of the United States, much relied on in the argument here, the learned justice who delivered the opinion of that court said on this subject: "The most important question in this case relates to the proper construction of the defendants' policy of insurance. It is contended on their behalf that it covered only the warehouse company's interest in the goods contained in the warehouse. * * * Blanket and floating policies are sometimes issued to factors or to warehousemen, intended only to cover margins uninsured by other policies, or to cover nothing more than the limited interest which the factor or warehouseman may have in the property which he has in charge. *In those cases, as in all others, the subject of the insurance, its nature and extent, are to be ascertained from the words of the contract which the parties have made.* It is as true of policies of insurance as it is of other contracts, that, except when the language is ambiguous, the intention of the parties is to be gathered from the policies alone. There are cases in which resort may be had to parol evidence to ascertain the subject insured; but they are cases of latent ambiguity. So, in the construction of other contracts, parol evidence is admissible to explain such ambiguities. In this particular the rule for the construction of all written contracts is the same. Lord Mansfield said long ago that courts are always reluctant to go out of a policy for evidence respecting its meaning." *Loraine* v. *Tomlinson*, 2 Doug. 585; *Astor* v. *Union Insurance Co.*, 7 Cow. 202; *Murray* v. *Hatch,* 6 Mass. 465. *Levy* v. *Merrill,* 4 Greenl. 180;

*Insurance Co.* v. *Loney*, 20 Md. 36; Arnould, Ins. 1316, 1317; 2 Greenl. Ev., 377; *Home Ins. Co.* v. *Baltimore Warehouse Co.*, 93 U. S. 527. But there are cases where resort to parol evidence is necessary to ascertain to whom the terms of the policy apply—as, when the policy is for or on account of the owner, or on account of whomsoever it may concern, evidence beyond the policy is then received to show who are the owners, or who were intended to be insured thereby. In such cases the policy fails to designate the real party to the contract, and, without resort to extrinsic evidence, there is no contract at all. *Home Ins. Co.* v. *Baltimore Warehouse Co., supra; Finney* v. *Bedford Ins. Co.*, 8 Metc. 348.

Let us look, then, to the terms of the contract now here drawn in question. This policy provides that, "by this policy of insurance, the Home Insurance Company of New York do insure W. W. Gwathmey & Co. against loss or damage by fire, to the amount of five thousand dollars, on cotton in bales and general merchandise, their own, or held by them in trust or on consignment, or sold, but not delivered, contained in the brick, metal-roof building known as 'Gwathmey's Warehouse,' situate on the south side of Water street, and known as 'Town Point,' in Norfolk, Virginia. Other concurrent insurance permitted. And the said Home Insurance Company hereby agree to make good unto the said assured, executors, administrators, and assigns, all such immediate loss or damage, not exceeding in amount the sum or sums insured, as above specified, nor the interest of the assured in the property, except as herein provided, as shall happen by fire," etc.

Among the conditions attached, and constituting a part of the policy, is the following provision: "Goods held on storage must be separately and specifically insured." In accordance with this last provision, the goods on storage were separately and specifically insured by other insurance obtained by the

depositors. This specific insurance was more than sufficient to pay in full all losses incurred by the said depositors. The insurers, however, of these goods on storage, refused to pay the losses of said depositors, unless and until their insured brought suit against insurers of the warehousemen, and exhausted against them their legal rights, if any, to have contribution from them, claiming that the general words of the policy cited above, "goods in trust," etc., entitled the depositors to share in the benefits of the insurance obtained by the warehousemen, upon the authority of the case of *Home Ins. Co.* v. *Baltimore Warehouse Co., supra.* In that case, which we have already considered at some length, Justice Strong said, speaking for the court: "Turning, then, to the policy issued to the plaintiff below, and construing it by the language used, the intention of the parties is plainly exhibited." "Its words are, 'insure Baltimore Warehouse Company against loss or damage by fire, on merchandise, their own, or held by them in trust, or in which they have an interest or liability, contained in a certain described warehouse. There is nothing ambiguous in the description of the subject insured; it is as broad as possible. The subject was merchandise contained in a certain warehouse. It was not merely an interest in that merchandise. The merchandise of the warehouse company owned by them was covered, if any they had. So was any merchandise in the warehouse in which they had an interest or liability, and so was any merchandise which they held in trust. The description of the subject must be entirely changed before it can be held to mean what the insurers now contend it means. If, as they claim, only the interest which the warehouse company had in the merchandise deposited in their warehouse was intended to be insured, why was that interest described as the merchandise itself? Why not as the assured's interest in it? And, again, 'the insurance company agreed to make good.

all loss,' etc., 'to the property, as above specified.'   Nowhere is
any less interest in the goods insured alluded to than the
entire ownership."

This case was argued in the Supreme Court October 25th
and 26th, and decided November 20, 1876.   The policy in
question here was issued December 16, 1884.   The Home
Insurance Company seems, in the interval of eight years
elapsing, to have profited by the teachings in that case, for it
cannot be said of this policy, as was said of the policy in that
case, "why not as to the assured's interest in it?" nor can it be
said of this, "nowhere is any less interest in the goods insured
*alluded* to than the entire ownership," for, as we have said, it
contains these words: "Not exceeding in amount the sum or
sums insured as above specified, nor the interest of the assured
in the property," etc.   And, as if to make the matter sure, the
words, "goods held on storage must be separately and specifi-
cally insured," are also added to the policy.   In this case the
depositors, not relying upon the warehousemen's insurance,
did, specifically and separately, amply secure themselves as to
their own goods, and make no contention here, except as
required by their insurers, for contribution; and it was offered
by the defendant company in the court below to prove that
such was the understanding all around, that the warehouse-
men did not undertake to insure their depositors, nor did the
depositors understand or claim that they were in anywise con-
cerned in the insurance in question; but all this evidence was
excluded by the trial court, which instructed the jury as fol-
lows: "The court instructs the jury that the insurance taken
out by the said W. W. Gwathmey & Co. (the warehousemen),
under their policies given in evidence, after deducting there-
from the loss of the said W. W. Gwathmey & Co., constituted
double insurance, and was liable to contribute to the losses

sustained by Battle, Bunn & Co. and Everett Bros., Gibson & Co., the depositors," etc.

"Double insurance" may be defined to be additional and valid insurance, prior or subsequent, *upon the same subject, risk* and *interest* effected by the *same insured, or for his benefit, and with his knowledge and consent;* but owners of different interests in the same property may respectively insure their interest without risk of violating a provision against other insurance. *Tyler* v. *Ætna Fire Ins. Co.,* 12 Wend. 507, 16 Wend. 387; *Sloat* v. *Royal Ins. Co.,* 49· Pa. St. 14; *Forbush* v. *Western Mass. Ins. Co.,* 4 Gray, 337.

In the case of *Parks* v. *General Interest Assurance Co.,* 5 Pick. 34, it was held that the assured might himself, by the representations made to the insurers, restrict their liability to his actual interest in the property; as when the plaintiff procured a policy on goods held by him in trust, and represented to the insurers that he was receiving goods for sale, on which he made advances, and that the consignors might not be able to repay the same, and that he wished for a policy to secure himself from loss by fire thereon, it was held that the policy only covered the assured's interest therein. So, a policy may be issued to and for the benefit of whom it may concern, or as the property may appear; and any person who had an insurable interest therein at the time of the loss, and whose interests were intended to be covered by the policy, may recover thereon. *City Bank* v. *Adams,* 45 Me., 455; *Rogers* v. *Trader's Ins. Co.,* 6 Paige, 583; *Steele* v. *Insurance Co.,* 17 Pa. St. 290; *Finney* v. *Bedford Com. Ins. Co.,* 8 Metc. 348.

For the decision of this case we are only to recur to the general principles stated above. The policy is to be construed according to its terms. Where these are plain and clear and unambiguous, there is no occasion whatever to resort to other evidence to ascertain its meaning; in other words, to ascertain and define the contract between the parties. From the plain

words of this policy, can there be any difficulty to determine the questions involved? The policy limits its liability to the loss affecting the *interest* of the assured, not to exceed the sum agreed on as the amount of the policy, and not to exceed the interest of the assured. This the appellant company has promptly and fully paid. Can they, the said appellants, be held responsible for goods on storage in which the assured had no interest? Again, the policy responds in plain terms, "Goods on storage must be separately and specifically insured." The depositors followed and obeyed this requirement, and did insure the goods on storage separately and specifically, but not in this company. They paid their premiums to other companies, and insured their goods on storage with them. These companies claim to have contribution of the appellant company, upon the ground of double insurance; that is, that the policy of the 'appellant company extended to a greater interest in the goods in the warehouse than the interest of their insured, and extended to goods on storage, and constituted double insurance. This cannot be maintained, unless the court can make a contract for the parties. If we are to confine our action to the enforcement of the contract as made by the parties themselves, there can be no contribution in this case; there is no double insurance. The appellant company has discharged every obligation growing out of their contract, and were entitled to be dismissed out of the corporation court of Norfolk, with their costs.

The court below erred in instructing the jury that the insurance was double upon the goods on storage, and rendering judgment against the defendant for any amount, and the said judgment will be reversed with costs, and a judgment rendered here dismissing the suit at the cost of the plaintiffs, which will be certified to the said corporation court of Norfolk city.

JUDGMENT REVERSED.