# ·Wytheville.

## HAMBURG-BREMEN FIRE INSURANCE CO. v. BROWNING.

### JUNE 23, 1904.

1. INSURANCE—*Premiums Advanced by Agent—Failure to Refund—Cancellation—Case at Bar.*—Insurance agents wrote a number of policies for assured in various companies, paid the premiums to the companies, and charged them up to the assured. The latter was constantly in default, but made payments from time to time simply on insurance account without special application to any particular policies. Being in default over $100, the agents made repeated and urgent applications to him to pay, but he took no notice of their requests. Finally, they threatened to cancel the policies if the amount was not paid to them by a given day. The threat was ignored, and some time thereafter the agents notified the assured of the cancellation of seven of his policies, and that they had applied part of the money paid by him to premiums to date on four of the policies on which he had paid nothing, and that $6.80 of unearned premiums was due him upon surrender of the policies, which he was requested to surrender at once and get his money. He received the notice of cancellation, and reinsured some of the property in other companies, but did not surrender his policies, or demur to the cancellation, or take any further notice of the cancellation. Six months afterwards the building covered by one of the policies was burned, and this action was brought on the policy to recover for the loss.

   *Held*: Notwithstanding the agents had advanced the premiums for the assured, they had the right to apply.the amount paid by him as they did, and to have the policies canceled for failure to pay the premiums thereon, and even if it was necessary that the $6.80 should have been paid to the assured in money before the cancellation could be effective, the whole of this was consumed by the currency of the policy in suit long before the date of the fire, and the assured is not entitled to recover.

Error to a judgment of the Circuit Court of Tazewell county, in an action of *assumpsit,* wherein the defendant in error was the plaintiff, and the plaintiff in error was the defendant.

*Reversed.*

The opinion states the case.

*Chapman & Gillespie,* for the plaintiff in error.

*Henry & Graham,* for the defendant in error.

HARRISON, J., delivered the opinion of the court.

This is an action of *assumpsit* brought by James S. Browning on a fire insurance policy issued to him by the plaintiff in error, through Messrs. Chapman & Hurt, its agents at Tazewell, Virginia, on a stable and contents, to an amount in the aggregate of $1,750.00, dated February 25, 1897. The property mentioned in the policy was destroyed by fire on the night of February 11, 1898. The plaintiff in error defended the action under the general plea of *non-assumpsit,* upon the ground, among others, that the policy had been terminated prior to the date of the fire.

There were two trials. The first resulted in a verdict against the insurance company for $1,750.00, which was set aside because contrary to the law and the evidence. The second trial resulted in a verdict against the company for $1,735.00, which the court refused to set aside, and thereupon this writ of error was awarded.

A number of bills of exception were taken to the action of the lower court, which we deem it unnecessary to consider or discuss. The view taken of the case by this court is that there was a total failure on the part of the plaintiff to make out a

case entitling him to recover, and, therefore, it is not necessary to do more than consider the assignment of error which involves the refusal of the court to set aside the verdict as contrary to the evidence.

This insurance agency represented a number of fire insurance companies, and had issued to the defendant in error, and to his wife, Ollie H. Browning, a number of policies in different companies on several separate properties. No separate accounts were kept by these agents in the name of the several companies against Browning, but the whole account for all of the insurance, amounting to some $400 or $500 in premiums each year, was kept in the name of Chapman & Hurt against Browning, who had taken out all the insurance, and was paymaster for the premiums on the policies in his wife's name, as well as those in his own name. In the payments made by him Browning never made or directed any special application thereof to any particular premium, but would make a general payment on "insurance account," leaving the payments to be applied by the agents. The evidence is abundant to show that the defendant in error was always behind in the payment of his premiums, and that frequent and urgent demands were made upon him for payments, and, while he made some payments on general insurance account, the record shows that he never at any time paid the full amount of premiums on his policies, but was always in arrears to the agency.

On June 14, 1897, the agents wrote to Browning, reminding him of the statement sent on the 5th of that month, showing a balance due on account of premiums amounting to $110.55, urging him again to send check for the amount, and telling him that the companies were complaining of their failure to remit; that the companies were ordering cancellation of policies if premiums were not paid at once. No notice was taken of this letter, and on June 28, 1897, the agents again wrote to the defendant in error as follows: "We have no reply to our letters

regarding the premiums on your insurance policies, which you promised to pay long since. Now, Colonel, we are at all times willing to extend to you every courtesy that is in our power, but this matter has been carried as long as we can do it. We have already suffered by allowing the matter to stand this long in direct opposition to orders from our companies. We relied on your promise to send us check, which you have failed to do. Now, if the same is not received in this office by July 1st, we will send you notices of cancellation of all policies on which the premiums have not been paid. The amount due us is $110.55." No notice was taken of this letter, and on July 21 the following letter was written: "Failing to hear from you in answer to our several recent letters, requesting remittance of your account (110.55) for premiums, . . . we draw on you to-day draft at one day sight for $110.55, which is subject to protest. Please honor draft on presentation, and let us hear from you." This draft was not honored, and no notice taken of the letter.

After these repeated and urgent efforts to have the defendant in error pay the premiums due from him on insurance, the agents sent to him, by registered mail, a notice that the policies mentioned therein were cancelled, and that the several companies acknowledged no further liability thereunder. This cancellation notice is dated August 2, 1897, and covers seven different policies, the fifth, No. 1373, being the policy involved in this suit. This cancellation notice concludes as follows: "On the four policies first mentioned in this notice, no part of the premiums has ever been paid, and the premiums earned for the time they have been in force, including costs of protest of drafts, &c., amount to $36.28. The return premiums on the three policies last named amount to $43.08; of this we apply $36.28 to the premiums due on the four first policies, leaving balance of $6.80 to be paid you on return of the policies. Please return all of the policies without delay."

This cancellation notice was duly received by the defendant

in error, and he treated it with the same silence that he had all previous communications; proceeds to reinsure part of the propety covered by the cancelled policies in other companies, fails to return the cancelled policies, as requested by the notice, and makes no claim or statement that the policies are still in force until after the fire on the night of February 11, 1898.

It is not denied that the companies, through their agents, had the right to cancel these policies, but it is contended that it could only be done in strict compliance with the terms of the policy, which provided that when cancelled the unearned premium should be returned, and that this was not done.

The language of an insurance contract is to receive a reasonable construction like any other contract. As already seen, the defendant in error was constantly and persistently in default in the payment of his premiums. He had relied on the agents to keep his property insured and keep up his premiums, and they had advanced money for him on that account until the running insurance account between them showed a balance in their favor of $110.55, which he refused to pay, and owed when the policies were cancelled. In view of the method of dealing between the parties—Browning making no special application of such sums as were paid by him—the agents had a right to apply those payments among the various policies in the way best calculated to protect themselves from loss in consequence of his default. The cancellation notice showed on its face that the only unearned premium on all of the policies together was $6.80, and it informed the defendant in error that the sum mention was due and payable when he returned the policies, and called upon him to return them without delay. This he never did, and for more than six months prior to the fire, in absolute silence, acquiesced in the terms of the cancellation.

It would be extremely technical to hold that because the agents had advanced the premiums to the companies for the defendant in error, therefore the balance due on the insurance ac-

count was a debt due to them, and that they had no right to
apply the unearned premiums to that account. But if this
technical position could prevail, and the company be held liable
because the $6.80 was not turned over in money to Browning,
there is still another view that would seem to be conclusive
of the question. The uncontradicted evidence shows that all
of the policies cancelled earned $15.81 per month; in other
words, it required that amount each month to keep them alive.
It further appears that it required $2.55 per month to keep the
policy sued on alive. If the cancellation was defective by rea-
son of the $6.80 not having been returned, it was certainly good
and sufficient notice to the defendant in error that the policies
had only $6.80 to keep them alive. He knew that they could
not be kept alive unless the premiums were paid, and also knew
that the companies would no longer carry his insurance on credit.
Applying the $6.80 to keeping all of the policies alive, they
would have expired in less than two weeks. If the whole of
the $6.80 had been applied to keeping the policy sued on alive,
it would have expired in less than three months. The fire did
not occur for more than six months after the cancellation no-
tice, at which time the policy sued on had long since lapsed by
the non-payment of premium.

Under the facts stated, we are of opinion that the defendant
in error cannot recover. To allow him to do so would be to
award him the benefit of an insurance for which he has never
paid, and which, by his conduct, he had recognized and treated
as cancelled and abandoned long before the fire occurred.

For these reasons the judgment complained of must be re-
versed, the verdict set aside and the case remanded for a new
trial.

*Reversed.*