200 Va. 396 (1958)
THOMAS E. AMPY
v.
THE METROPOLITAN CASUALTY INSURANCE COMPANY OF NEW YORK.
Record No. 4836.
Supreme Court of Virginia.
December 1, 1958.
Charles Edgar Gilliam (T. Taylor Cralle; Richard E. Lewis; J. Thompson Wyatt, on brief), for the plaintiff in error.
Edward R. Parker (Richard L. Williams; Bremner, Parker, Neal, Harris & Williams, on brief), for the defendant in error.
Present, All the Justices.
1. Ampy recovered judgment against William Tomlin for property damage done his automobile as a result of a collision with a car driven by Tomlin and allegedly covered by a policy issued by defendant company. Being unable to recover on this judgment, Ampy sued on the policy. The defense was that the company's general agent had cancelled the policy for non-payment of premiums prior to the collision. It was held that Ampy's rights rose no higher than those of the insured, in whose shoes he stood, and that he could have no rights under the policy if it had been effectively cancelled.
2. Code 1950, section 38.1-381.1 which provides the manner of cancelling motor vehicle insurance policies, became a part of the policy in question and was binding on the parties to it.
3. Since notice of cancellation was mailed to the insured in accordance with the terms of the policy and the statute, it was not necessary to prove its receipt.
4. Cancellation was not affected by the agent's failure at the time to return unearned premiums. The cancellation was complete upon mailing of notice, return of the unearned premium being a consequence of rather than a condition precedent to the cancellation.
5. Though the general agent had advanced the premium on the policy to the company and this operated as a payment between the company and the insured, the agent could cancel the policy at any time, for any reason.
6. The plaintiff's contention that the course of dealing between the insured and the agent misled the insured into believing she could pay the premium after receipt of a certain check presented a factual issue. The decision below in favor of defendant settled the issue adversely to plaintiff.
7. Under the evidence, the fact that a statement of account was mailed insured after the cancellation notice was sent, requesting payment of balance due on account, did not constitute a waiver of the cancellation.
Error to a judgment of the Circuit Court of Dinwiddie county. Hon. J. G. Jefferson Jr., judge presiding. The opinion states the case.
I'ANSON
I'ANSON, J., delivered the opinion of the court.
 Thomas E. Ampy recovered a judgment against William H. Tomlin in the amount of $500.00 for property damages to his automobile which was in a collision with an automobile owned by Ethel C. Tomlin and operated with her permission by her husband, William H. Tomlin. Execution was issued on the judgment and returned no effects.
This action was instituted by Ampy against Metropolitan Casualty Insurance Company of New York to recover the amount of the judgment upon its contract of insurance [1] covering the Tomlin automobile. The case was tried without a jury and judgment was entered for the defendant. To this judgment we granted a writ of error.
The parties will be referred to as plaintiff and defendant in accordance *398 with their respective positions in the court below, except the defendant will often be referred to as the insurer. Mrs. Tomlin will often be referred to as the insured.
The plaintiff contends in his assignment of error that the defendant, or its general agent, had no right to cancel the insurance policy at the time and in the manner it was canceled for failure to pay a balance due on the premium.
Thus, the sole question involved is: Did the defendant's general agent effectively cancel the automobile liability insurance policy issued to Ethel C. Tomlin for non-payment of premiums before the date of the damage to plaintiff's automobile? If the policy was effectively canceled the plaintiff had no rights under the insurance contract, and the judgment of the circuit court should be affirmed.
On July 23, 1955, the defendant, through its general agent, Frank E. Wiley, issued an automobile liability insurance policy covering an automobile owned by Ethel C. Tomlin. Fourteen dollars and fifty-two cents was paid on account of the premium, and the balance of $30.00 was to be paid in installments. Ten dollars was paid on account on August 5. No other payments were made, although statements of balance due were sent insured. One statement was dated November 28, three days after date of mailing the cancellation notice. The evidence is in conflict as to when the balance would have to be paid under the installment arrangement. The general agent testified he told the insured that the entire premium would have to be paid within 45 days from the issuance of the policy. Insured claimed the general agent had agreed to let her pay the balance when she received her bonus check around Christmas time. At the expiration of 45 days the general agent sent his conditional monthly remittance of premiums to the defendant.
On November 25 the general agent's son, an associate in his office, mailed to the insured at the address shown on the policy a cancellation notice, to become effective December 6, for non-payment of premium. At the time of the mailing of the notice he obtained from the post office department a written receipt showing the name and address of the insured, and retained a duplicate copy of the notice upon which was endorsed a certificate of mailing. The insured claimed she never received the notice. The general agent's son's explanation for mailing the statement dated November 28 was that the cancellation notice had not been promptly entered upon the *399 account records, and it was routine for the bookkeeper to send statements on all accounts showing a balance at the end of the month.
The Tomlin automobile was involved in an accident on December 17. On December 19 the insured called the general agent's office "about getting her insurance straightened out," but the general agent was not in the office. Later on the same day the general agent sent a letter to Mrs. Tomlin advising her to call or stop by his office "to straighten her insurance out." Mrs. Tomlin stated she called at the office on December 23 and that the general agent was about to accept the balance due on her premium when she informed him of the accident on the 17th. The general agent testified that he told her the insurance had been cancelled and gave her the agency check covering the unearned premium in the amount of $7.91, which she endorsed and cashed in his office.
The policy issued to the insured contained the following cancellation clause:
"24. Cancellation. All coverages."
"This policy may be cancelled by the Named Insured by mailing to the Company written notice stating when thereafter the cancellation shall be effective. This policy may be cancelled by the Company by mailing to the Named Insured at the address shown on this policy written notice stating when not less than ten days thereafter such cancellation shall be effective. The mailing of notice as aforesaid shall be sufficient proof of notice. The effective date and hour of cancellation stated in the notice shall become the end of the policy period. Delivery of such written notice either by the Named Insured or by the Company shall be equivalent to mailing."
"If the Named Insured cancels, earned premium shall be computed in accordance with the customary short rate table and procedure. If the Company cancels, earned premium shall be computed prorata. Premium adjustment may be made either at the time cancellation is effected or as soon as practicable after cancellation becomes effective, but payment or tender of unearned premium is not a condition of cancellation."
The right of the plaintiff to maintain this action against the defendant rises no higher than the right of the insured against the defendant. The plaintiff stands in the same shoes as the insured, and the same defenses that would be available to the defendant in an action brought by the insured are available to the defendant in this action. Indemnity Ins. Co. of North America Hettie I. Davis' *400 Adm'r, 150 Va. 778, 787, 788, 143 S.E. 328, 330; Storm Nationwide Ins. Co., supra, (199 Va. at p. 135).
 Parties to insurance contracts are bound by the same rules of construction which apply to other contracts, subject, of course, only to provisions of law affecting insurance contracts. Darden North American Benefit Ass'n, 170 Va. 479, 482, 197 S.E. 413. In the absence of latent ambiguity, insurance contracts are to be construed according to their terms and provisions. Connecticut Fire Ins. Co. Roberts Lumber Co., 119 Va. 479, 89 S.E. 945, Ann. Cas. 1918 E. 1045; Home Ins. Co. Gwathmey, 82 Va. 923, 1 S.E. 209.
The cancellation clause in the policy before us is very similar to the one in State Farm Ins. Co. Pederson, 185 Va. 941, 946, 948, 41 S.E.2d 64, 65, 66, in which this Court said: "Under such provisions either party has a right, by complying with the terms of the policy to terminate the contract. The consent of the other party is not necessary."
Section 38.1-381.1, Code of 1950, provides the manner of cancelling motor vehicle insurance policies, and reads as follows:
"Notices of cancellation of motor vehicle insurance policies. -- No written notice of cancellation sent by mail by an insurer to an insured in accordance with the provisions of a motor vehicle insurance policy shall be effective unless it is sent by registered mail or unless at the time of the mailing of said notice, the insurer has obtained from the Post Office Department a written receipt showing the name and address of the insured and the insurer has retained a duplicate copy of said notice upon which is endorsed a certificate by the insurer that the duplicate copy is a copy of the notice which was sent to the insured in the mail for which said receipt was obtained."
"In the event that any such notice is mailed by other than registered mail or without obtaining the receipt and retaining the duplicate copy of said notice endorsed as specified above, then the burden of proof that said notice was actually delivered to the insured shall be upon the insurer. (1954, c. 263)"
This code provision became a part of the insurance policy contract by force of its language and either party seeking to cancel the policy has to comply with it. Maxey American Casualty Co., supra; and Storm Nationwide Ins. Co., supra.
 There is a conflict of authority on the question of whether a notice of cancellation sent by the insurer by mail must be received before it can become effective. This conflict has arisen out of a *401 variation in the facts and the provisions of the policy or statutes dealing with the giving of notice of cancellation. 29 Am. Jur. | 285. See Anno. 123 A.L.R. 1008; 26 Va.L.Rev. 224.
Under the rule laid down by this Court in Wolonter United States Casualty Co., 126 Va. 156, 166, 101 S.E. 58, 61 it is not necessary to prove actual receipt of the cancellation notice. If the notice is mailed in accordance with the terms of the policy and the provisions of the statute the notice of cancellation is effective. See also Wright Grain Dealers Nat. Mut. Fire Ins. Co., 4 Cir., 186 F.2d 956, 958, 960; Boyle Inter Ins. Exchange of Chicago Motor Club, 335 Ill.App. 386, 82 N.E.2d 179; Cherokee Ins. Co. Hardin, (Tenn.), 302 S.W.2d 817 (1957); Anno. 123 A.L.R. 1013, II b.
The notice of cancellation was mailed in accordance with the terms of the policy and the statute, and it was not necessary that the defendant prove that the insured received it. It was absolute and unconditional, and effectively terminated the policy.
 The failure of the general agent to return unearned premium to the insured at the time of the cancellation has no effect on its cancellation. Notice of cancellation, when given in accordance with the terms of the policy and the statute, terminates the policy ipso facto, and the obligation of the agent to return unearned premium creates a debtor-creditor relationship. State Farm Ins. Co. Pederson, supra, at pp. 949, 950.
The cancellation clause provides that when the company cancels a policy "premium adjustments may be made either at the time cancellation is effected or as soon as practicable after cancellation becomes effective, but payment or tender of unearned premiums is not a condition of cancellation." The defendant's general agent was under no duty to return the unearned premium at the time of the cancellation. Pursuant to the provisions of the policy contract the unearned premium was delivered to insured "as soon as practicable," which has been construed to mean within a reasonable time. Return of the unearned premium is a consequence but not a condition precedent to the cancellation. Wallace State Farm Mut. Auto. Ins. Co., 187 Tenn. 692, 216 S.W.2d 697; Turney Allstate Ins. Co., 167 Pa.Super. 175, 74 A.2d 730; Leslie Standard Acci. Ins. Co., 327 Ill.App. 343, 64 N.E.2d 391. See also Anno. 16 A.L.R.2d 1204 and 1205.
 The plaintiff asserts that when the general agent advanced the premium on the policy to the insurance company it operated *402 as payment between the company and the insured and created a debtor-creditor relationship between the general agent and the insured, thereby depriving the general agent of his right to cancel the policy. In support of his contention he cites Farmers & Mechanics Benevolent Fire Ins. of Roanoke & Botetourt Counties Horton, 157 Va. 114, 160 S.E. 315, 318; and Wytheville Ins. Co. Teiger, 90 Va. 277, 18 S.E. 195.
The principle that when an agent advances premiums on policies to his company it operates as a payment between the company and the insured and creates a debtor-creditor relationship between the agent and the insured is sound, but it does not follow that a general agent is deprived of the right to cancel a policy when such right is given the insurer under the insurance contract. The right to cancel the policy at any time, for any reason or for no reason, was given the insurer under the contract of insurance before us. The uncontradicted evidence is that the general agent had the right to cancel the policy. As general agent he was given the right to issue the policy, collect premiums, and cancel it. The insured look upon the general agent as being the insurance company. In Royal Indemnity Co. Hook, 155 Va. 956, 965, 157 S.E. 414, 417, and Virginia Auto Mut. Ins. Co. Brillhart, 187 Va. 336, 345, 46 S.E.2d 377, 381, the following is quoted with approval: "The insurance agent, within the general scope of the business he transacts is pro hac vice the insurance company. What he knows they know. What he does they do. He has power to bind and to loose, and no limitation of his power unknown to strangers will bind them." Coles Jefferson Ins. Co., 41 W.Va. 261, 23 S.E. 732, 733. If the insured had desired to cancel the policy she could have done so by giving proper notice to the general agent and it would have been binding on the company. Royal Indemnity Co. Hook supra; Virginia Auto Mut. Ins. Co. Brillhart, supra. To hold that a cancellation notice given by an insured to a general agent is binding on the company, but a notice of cancellation mailed to an insured by a general agent who extended credit to an insured is not binding on an insured would not only be inequitable but contrary to the provisions of the cancellation clause in the insurance contract before us.
In Wright Grain Dealers Nat. Mut. Fire Ins. Co., supra, at p. 961, the court said "* * * The wide discretion generally accorded to policy writing agents in writing and canceling contracts of insurance and in extending credit for the payment of premiums, in order to *403 serve both parties to the insurance contract, is well known. In Virginia the right of the agent to cancel an insurance policy in liquidation of an indebtedness to the insurance agency is recognized in Hamburg-Bremen Fire Ins. Co. Browning, 102 Va. 890, 894, 48 S.E. 2."
In Hamburg-Bremen, supra, the court refused to hold the policy valid after the agent had canceled the policy because of non-payment of the premium, even though the agent had advanced the premiums to the company for the insured. See also Bleicher Heeter, 141 Neb. 787, 4 N.W.2d 897, 901, 902, where the court held that the right of an agency to cancel insurance contracts is not impaired by voluntary advancement of premiums by the agency.
 The plaintiff further argues that the course of dealing between the insured and the defendant's general agent was such as to mislead the insured into believing she could pay the premium at the time designated by her and allegedly agreed to by the general agent. This was a factual situation passed on by the trial judge, who rejected the statement of the insured and resolved it in favor of the general agent. The finding of the trial judge upon the credibility of witnesses and the weight to be given their testimony stands on the same footing as the verdict of a jury. It is presumed to be correct and the burden is on him who assails it to show that it is wrong. Sutton Menges,
186 Va. 805, 809, 44 S.E.2d 414, 416, 417; Williams Williams, 192 Va. 787, 791, 66 S.E.2d 500, 502.
 The plaintiff contends that the mailing of a statement dated three days after the date of the cancellation notice, requesting payment of the balance due on the account, constituted a waiver of the cancellation. There is no merit in this contention.
The cancellation notice was unconditional and terminated the policy. The statement of the balance due on account was sent in the regular course of business because the cancellation notice was not immediately recorded on the accounts of the agency. There was nothing on the statement of indebtedness to indicate that the policy was still in force or that the cancellation notice was not effective. The insured ignored the statement and did not respond to it until after the loss occurred. Sending the statement after mailing cancellation notice did not constitute a waiver of the cancellation. Mercer South Atlantic Ins. Co., 111 Va. 699, 704, 705, 69 S.E. 961; Sellers Life Ins. Co. of Va., 205 N.C. 355, 171 S.E. 328.
The letter written to insured on December 19 by the general *404 agent, in response to a call by her to the general agent's office, to call or stop by the office "to straighten your insurance out" did not constitute a waiver of the cancellation notice. The cancellation had already become effective before the loss occurred. The letter was written after the date of the accident and did not mislead her to her prejudice. State Farm Ins. Co. Pederson, supra; Mercer South Atlantic Ins. Co., supra; Tennent Union Mut. Life Ins. Co.,
150 Va. 548, 143 S.E. 705, 707, 708. The offer to "straighten your insurance out" could have referred to the return of the unearned premium.
The plaintiff further contends that the premium paid by insured was sufficient to keep the policy in effect until February 4, 1956. Even if the premium had been paid for the entire year, under the terms of the cancellation clause the insurer could terminate it by returning to the insured the unearned premium "as soon as practicable" after cancellation notice. The parties are bound by the plain terms of the insurance contract. There is no merit in this contention.
The insurance policy issued to the insured was effectively canceled before the date of the damage to the plaintiff's automobile. The judgment of the lower court is
Affirmed.
NOTES
[1] See || 38.1-380 and 38.1-381, Code of 1950, which constitute part of policy. Maxey American Casualty Co., 180 Va. 285, 23 S.E.2d 221; Storm Nationwide Ins. Co., 199 Va. 130, 97 S.E.2d 759.