**JOHN HANCOCK MUTUAL LIFE IN-SURANCE COMPANY, a corpora-tion, Appellant,**

v.

**C. E. TUGGLE, individually and as Ad-ministrator of the Estate of Carrol E. Tuggle, deceased, Appellee.**

No. 6739.

United States Court of Appeals
Tenth Circuit.

April 10, 1962.

Rehearing Denied May 16, 1962.

114

Ben L. Burdick, Oklahoma City, Okl. (Robert W. Pittman, and Crowe, Boxley, Dunlevy, Thweatt, Swinford & Johnson, Oklahoma City, Okl., on the brief), for appellant.

John A. Johnson, Oklahoma City, Okl. (Savage, Gibson, Benefield & Shelton, Oklahoma City, Okl., on the brief), for appellee.

Before BRATTON, LEWIS and BREITENSTEIN, Circuit Judges.

BRATTON, Circuit Judge.

C. E. Tuggle, hereinafter referred to as the beneficiary, was the father of Carrol E. Tuggle, deceased, hereinafter referred to as the insured. The beneficiary instituted this action in the United States Court for Western Oklahoma against John Hancock Mutual Life In-

surance Company to recover upon a policy of insurance covering the life of the insured. The defenses were that the policy never went into effect; that the policy lapsed for nonpayment of premiums; and that misstatements of material fact were made in the application for the policy respecting the medical and hospital history of the insured. Jurisdiction was predicated upon diversity of citizenship with the requisite amount in controversy. The cause was tried to a jury; a verdict was returned for the beneficiary; judgment was entered on the verdict; and the cause is here on review.

 The company was organized under the laws of Massachusetts; its home office was located in Boston; and it was engaged in business in multiple states, including Texas. At the time of submitting the application for the policy, the insured resided in Texas; the application was submitted there; the policy was to be delivered there; and it was mailed to an agent of the company in Texas for delivery there. Therefore, the law of that state governs the substantive rights and liabilities of the parties under the policy. Aetna Life Insurance Co. v. Dunken, 266 U.S. 389, 45 S.Ct. 129, 69 L.Ed. 342; Mutual Life Insurance Company of New York v. Johnson, 293 U.S. 335, 55 S.Ct. 154, 79 L.Ed. 398; John Hancock Mutual Insurance Co. v. Yates, 299 U.S. 178, 57 S.Ct. 129, 81 L.Ed. 106; Harris v. Pacific Mutual Life Insurance Co., 10 Cir., 137 F.2d 272.

 With certain exceptions not having material bearing here, it is a general rule firmly imbedded in the law of Texas that life insurance transactions are to be judged upon the same basis as other business contracts or negotiations therefor. Republic National Life Insurance Co. v. Hall, 149 Tex. 297, 232 S.W.2d 697. And it is also a general rule in that state that all parts of an insurance contract are to be taken together and given such reasonable meaning as will effectuate to the fullest extent the intention of the contracting parties. United American Insurance Co. v. Selby, 161 Tex. 162, 338 S.W.2d 160.

 The first ground of challenge to the judgment is that the company never became liable under the policy for the reason that it was not delivered to the insured. The application provided that if the first full premium was not paid when it was signed, the contract of insurance should take effect as of the date of issue of the policy but only upon delivery to the insured and his receipt therefor and payment of the first premium; and it further provided that if the first premium was paid when the application was signed, the contract of insurance should take effect as provided in and subject to the terms of the company's prescribed temporary receipt. When issued, the policy was mailed to the district agency manager in Texas for delivery to the insured. The soliciting agent endeavored to make physical or manual delivery but was unable to do so. He called at the apartment of the insured more than once for such purpose but failed to find the insured there. It is the rule in Texas that where an insurance contract contains a provision that it shall not go into effect until manual delivery has been made, such delivery is a condition precedent to liability on the part of the company. Smith v. Rio Grande National Life Insurance Co., Tex.Civ.App., 227 S.W.2d 579; Snow v. Gibraltar Life Insurance Co. of America, Tex.Civ.App., 326 S.W.2d 501. But this contract of insurance did not expressly provide that actual, physical, or manual delivery of the policy should be a condition precedent to liability of the company. It merely required delivery and receipt without specifying the manner of delivery.

While there is a lack of complete unanimity among the courts relating to the rule, the majority rule is that where an insurance contract provides in general language that it shall not go into effect or the company become liable thereunder until delivery has been made but fails to specify that such delivery shall be actual, physical, or manual, transmission of the policy to an agent of the company for unconditional delivery to the insured constitutes constructive delivery which

meets the requirements of the contract in respect to delivery as a prerequisite to liability. See notes and cases, 145 A. L.R. 1447. And as we understand, the rule obtains in Texas. Fidelity Mutual Life Association v. Harris, 94 Tex. 25, 57 S.W. 635; American National Insurance Co. v. Blysard, Tex.Civ.App., 207 S.W. 162; Denton v. Kansas City Life Insurance Co., Tex.Civ.App. 231 S.W. 436; Smith v. Rio Grande National Insurance Co., supra. We think it is clear that constructive delivery of the policy in suit was effectuated when it was mailed to the agent for unconditional delivery to the insured.

A second ground of challenge to the judgment is that the policy did not go into effect for the further reason that the first quarterly premium thereon was not paid. The application requested that the premiums be payable quarterly. And in addition to providing that the policy should not go into effect until its delivery, the application provided that the insurance should not go into effect until payment of the first premium. The policy specified an annual premium, stating the amount; but it expressly provided that premiums could be paid semiannually or quarterly. The amount of a quarterly premium was $58.10. At the time of submitting the application, the insured paid to the soliciting agent $19.60. That was the equivalent in amount of one month's premium and it was paid as a monthly premium. Upon such payment, the soliciting agent detached from the application and gave to the insured a temporary receipt for the advance premium. The company filed in the case its response to a request for admissions of fact. In such response, the company stated that the insured paid a monthly premium when he made application for the policy; that such payment was authority to the company to set up premiums on a monthly basis; and that it was understood by the insured that he was paying only a monthly premium in order that he might obtain the policy and have it reviewed by a banker friend. The amount was paid and received as a premium; and it was retained by the company without suggestion of return for about eight months. It thus is clear that the parties considered such payment as the first premium on the policy. Otherwise, the insured would not have been entitled to possession of the policy without paying a further sum, and the company would doubtless have directed the agent to collect at the time of delivering the policy an additional sum sufficient to make up a quarterly premium. We think that in the circumstances payment of the monthly premium met the exactions of the policy in respect to payment of the first premium as a prerequisite to the policy becoming effective.

A third ground of challenge to the judgment is that if the policy ever became effective, it lapsed for nonpayment of premiums. The premiums were payable in advance. The policy contained the conventional provision relating to a grace period of thirty one days. And it also contained the usual provision that payment of any premium should not maintain the insurance in force beyond the date when the next succeeding premium became due. The application was submitted and the $19.60 paid on February 18, 1957. No premiums were paid thereafter. The policy was issued on April 26 and mailed to the agent for delivery. And the insured died of a malignancy on November 23. Notice of a quarterly premium in the sum of $58.10, due July 26, was mailed to the insured at his address in Texas. The insured never opened the envelope containing the notice. The unopened envelope containing the notice was found in his brief case along with other personal papers in his apartment. Another notice of quarterly premium, due October 26, was mailed to the insured at his address in Texas. It was forwarded and reached the beneficiary. On its receipt, the beneficiary mailed his check for $58.10 to the district office of the company in Texas. The company returned to the beneficiary the check of $58.10 and mailed to him its check for $19.60 representing the return of the cash paid with

the submission of the application. There is no indication in the record that the insured knew the policy had issued, knew the exact amount of the quarterly premiums, or knew the dates on which such premiums were due. But the notice mailed to him concerning the quarterly premium due in July constituted notice to him that the amount of each quarterly premium was $58.10, and that one would be due July 26. Still he took no action. Whatever may have been the generating cause for his inaction, if the policy had not previously lapsed, it lapsed at the expiration of the grace period following July 26 and was not in effect at the time of the death of the insured, unless the forfeiture for failure to pay that premium was waived.

The beneficiary advances the contention that by mailing the two notices of quarterly premiums due, the company waived any forfeiture of the policy which may have occurred. The provision in the policy for forfeiture for nonpayment of premiums when due was exclusively for the benefit of the company, and the company could waive it. No action on the part of the company was necessary to effectuate forfeiture. But waiver of forfeiture did not occur ipso facto without any act or conduct of the company. Some act or conduct amounting to recognition of the continued validity of the policy as a binding obligation upon the company was necessary to constitute an effective waiver. Under the law of Texas, negotiations including an offer to make a loan to the insured with the policy as security constitutes an effective waiver. Equitable Life Assurance Society of the United States v. Ellis, 105 Tex. 526, 147 S.W. 1152, 152 S.W. 625. In like manner, extending or agreeing to extend a note previously given in part payment of a premium constitutes a waiver of the right to enforce forfeiture. Roberts v. Wichita Southern Life Insurance Co., Tex.Com.App., 221 S.W. 268. And it would not be difficult to conceive of other comparable circumstances which would effectuate a waiver. But nothing of that kind took place here. The two

communications mailed to the insured were mere routine notices in conventional form of quarterly premiums due. Neither contained any statement that the policy was then in effect. And neither contained any language fairly indicating an intent or purpose on the part of the company to waive any forfeiture for nonpayment of premiums. The mere sending of the routine notices, standing alone and without more, did not constitute an effective waiver of forfeiture. Sellers v. Life Insurance Company of Virginia, 205 N.C. 355, 171 S.E. 328; Ampy v. Metropolitan Casualty Insurance Company of New York, 200 Va. 396, 105 S.E.2d 839; Laustrup v. Bankers Life Co., 355 Mo. 304, 196 S.W.2d 260.

The beneficiary asserts that the company is estopped to rely upon forfeiture of the policy for nonpayment of premiums. The asserted ground of estoppel is that the company denied the claim of the beneficiary on the sole ground that the policy was never delivered and therefore the company never became liable under it. It is the general rule in Texas that where an insurance company bases its refusal to pay a loss on a specified ground, and the insured or beneficiary changes his position to his detriment in reliance upon such refusal, the company is estopped when sued for the loss to assert another ground relieving it of liability of which it had full knowledge at the time of the refusal. National Aid Life Association v. Murphy, Tex.Civ.App., 78 S.W.2d 223; Great American Accident Insurance Co. v. Roggen, Tex.Civ.App., 144 S.W.2d 1115; American Employers' Insurance Co. v. Brock, Tex.Civ.App., 215 S.W.2d 370.

The basic facts underlying the asserted estoppel are not in dispute. The beneficiary told the district manager of the company that he would like to see the application and the policy. In reply, the manager told the beneficiary that the policy had been returned to the home office and that he would advise the home office of the request. The company wrote the beneficiary that the district manager had informed it that the beneficiary had

requested a copy of the application and a copy of the policy. It was further stated in the letter that as no contract was ever delivered, the company would not accede to the request. The attorneys for the beneficiary wrote the company that they would appreciate it very much if they were furnished copies of the application and the policy. In its letter transmitting copies to the attorneys, the company stated that the policy was never in the possession of the insured. The attorneys wrote the company that in view of its courtesy in sending them such copies, they were enclosing to the company a copy of a petition which they had prepared for filing suit in the state court to recover on the policy. It was further stated that the attorneys did not contemplate filing such suit for about two weeks if the company would like to have a representative of its claim department talk over the claim. In its acknowledgment of such letter and copy of the petition, the company stated that it would merely await developments. It is to be noted that the conference and the correspondence preceding the letter transmitting a copy of the petition to be filed in the state court related only to the matter of the beneficiary seeing the application and the policy or the company furnishing him or his attorneys copies thereof. It is further to be noted that the letter transmitting a copy of the petition to be filed in the state court did refer specifically to a claim under the policy and indicated a willingness to discuss such claim. If that letter be treated as a claim, and if the letter of acknowledgment be treated as a denial of the claim, the denial was not based solely on the ground that the policy was never delivered. Such letter of denial merely stated that the company would await developments. To say that by such letter the claim was denied solely on the ground that the policy was never delivered would be nothing less than distortion of plain language. When all of the basic facts are considered singly or together, it is clear that the company did not decline to make payment of a claim on the sole ground that the policy was never delivered to the insured; and therefore the company is not estopped to assert as a defense lapse of the policy for failure to pay premiums.

Since the policy lapsed for nonpayment of premiums, other grounds of attack upon the judgment become mere abstractions and need not be discussed.

The judgment is reversed and the cause is remanded.