## CIRCUIT COURT OF THE CITY OF RICHMOND

Michael Locke
and Dianna Locke

v.

Allstate Ins. Co.

February 13, 1992

Case No. LS-4012–4

BY JUDGE RANDALL G. JOHNSON

This is an action against Allstate Insurance Company to recover property damage resulting from an automobile accident. At trial, all material facts were submitted to the court, sitting without a jury, by way of written stipulations, and counsel presented their arguments. The relevant facts are as follows.

Plaintiffs are husband and wife. Dianna Locke had an automobile policy with Allstate which contained a stated expiration date of May 12, 1990, and all premiums had been paid for coverage through that date. On April 12, 1990, Allstate mailed to plaintiffs, by regular mail, a renewal offer in which Allstate manifested its willingness to renew the policy. The offer included (1) the name of the insured; (2) the expiration date of the policy; (3) the type of insurance to be provided; and (4) a statement of the amount of the renewal premium, which was to be paid on or before May 10, 1990. A "reminder" notice was mailed by Allstate to plaintiffs, also by regular mail, on April 23, 1990. Neither the April 12th renewal offer nor the April 23rd reminder was received by plaintiffs. No other notices or statements of any kind were sent to plaintiffs by Allstate, and Allstate never received a renewal premium from plaintiffs. On June 2, 1990, Michael Locke was involved in an accident while driving the vehicle

which was insured under the subject policy. The vehicle sustained damage in the amount of $3,765.68. Allstate, claiming that its policy with plaintiffs had expired, has denied coverage.

Plaintiffs contend that Allstate is precluded from denying coverage because it failed to comply with certain statutory requirements imposed upon insurance companies when refusing to renew automobile policies. Specifically, plaintiffs rely on Va. Code § 38.2–2208(A), which provides:

> Section 38.2–2208. *Notices of cancellation of or refusal to renew motor vehicle insurance policies.* — A. No written notice of cancellation or refusal to renew that is mailed by an insurer to an insured in accordance with the provisions of a motor vehicle insurance policy shall be effective unless:
>
> 1.a. It is sent by registered or certified mail, or
>
> b. At the time of mailing, the insurer obtains a written receipt from the United States Postal Service showing the name and address of the insured stated in the policy;
>
> 2. The insurer retains a duplicate copy of the notice of cancellation or refusal to renew; and
>
> 3. At the time of mailing, the insurer endorses upon the duplicate copy of the notice a certificate showing that the duplicate is a copy of the notice that was sent to the insured (i) by registered or certified mail, or (ii) by regular mail for which the postal receipt was obtained.

It is plaintiffs' position that since Allstate's renewal notice and reminder notice were not sent by registered or certified mail, and since no written receipt from the United States Postal Service was obtained by Allstate at the time of mailing, Allstate's refusal to renew is ineffective. As can be seen, however, Section 38.2–2208(A) does not, by itself, require an insurance company to send *any* notice to its insured. Instead, that section merely sets forth certain requirements which an insurer must meet if it mails to an insured a notice of cancellation or refusal to renew which is required under an insurance policy. Since no evidence has been presented as to what notice is required under the policy involved in this case, but since certain minimum notice requirements set out in other statutes are deemed to be a part of every policy issued in the Commonwealth, we must look

to some other statute to determine whether the requirements of Section 38.2–2208(A) are applicable.[1] Specifically, we must look to § 38.2–2212.

Section 38.2–2212 is a fairly lengthy statute which deals with the grounds and procedure for cancelling or refusing to renew motor vehicle insurance policies. For purposes of this opinion, the following portions of that section are important. First, subsection A sets out the following definitions:

"Cancellation" or "to cancel" means a termination of a policy during the policy period . . . .

"Renewal" or "to renew" means (i) the issuance and delivery by an insurer of a policy superseding at the end of the policy period a policy previously issued and delivered by the same insurer, providing types and limits of coverage at least equal to those contained in the policy being superseded, or (ii) the issuance and delivery of a certificate or notice extending the term of a policy beyond its policy period or term with types and limits of coverage at least equal to those contained in the policy.

Next, subsection E provides, in pertinent part:

E. No cancellation or refusal to renew by an insurer of a policy of motor vehicle insurance shall be effective unless the insurer delivers or mails to the named insured at the address shown in the policy a written notice of the cancellation or refusal to renew.

That subsection then sets out six requirements for the written notice, none of which were complied with by Allstate here.

Finally, subsection F provides:

F. Nothing in this section shall apply:

1. If the insurer or its agent acting on behalf of the insurer has manifested its willingness to renew by issuing or

---

[1] See, e.g., Maxey v. American Cas. Co., 180 Va. 285, 23 S.E.2d 221 (1942), in which the Court said of insurance contracts: "A pertinent statute is as much a part of the contract as if it were incorporated in it. The general rule is that 'laws in existence are necessarily referred to in all contracts made under such laws'." 180 Va. at 290 (quoting, Union Cent. Life Ins. Co. v. Pollard, 94 Va. 146, 153, 26 S.E. 421 (1896). See also, Storm v. Nationwide Ins. Co., 199 Va. 130, 135, 97 S.E.2d 759 (1957).

offering to issue a renewal policy, certificate, or other evidence of renewal, or has manifested its willingness to renew in writing to the insured. The written manifestation shall include the name of a proposed insurer, the expiration date of the policy, the type of insurance coverage, and information regarding the estimated renewal premium. The insurer shall retain a copy of each written manifestation for a period of at least one year from the expiration date of any policy that is not renewed;

2. If the named insured, or his duly constituted attorney-in-fact, has notified in writing the insurer or its agent that he wishes the policy to be cancelled or that he does not wish the policy to be renewed, or if prior to the date of expiration, he fails to accept the offer of the insurer to renew the policy; or

3. To any motor vehicle insurance policy which has been in effect less than sixty days when the termination notice is mailed or delivered to the insured, unless it is a renewal policy.

Without conceding the inapplicability of § 38.2–2208 — indeed, one of the requirements of § 38.2–2212(E) is compliance with § 38.2–2208 — plaintiffs argue that Allstate's actions were a "refusal to renew" their policy, and that since the requirements of § 38.2–2212(E) were not complied with, the refusal to renew was never effective.

On the other hand, Allstate argues that no coverage existed after the policy's stated expiration date for two reasons. First, Allstate argues that it never "refused" to renew plaintiffs' policy; it simply did not renew the policy when no response was made to its renewal and reminder notices. Thus, according to Allstate, § 38.2–2212(E) never comes into play.[2] Second, Allstate contends that even if its actions do constitute a "refusal to renew," Section 38.2–2212(F)(1) does away with whatever notice would otherwise be required.

With respect to whether Allstate "refused to renew" plaintiffs' insurance, Allstate cites *Snellings v. Peninsula Insurance Co.*, 15 Va. Cir. 235 (Spotsylvania County, 1988). In that case, the insurer issued

---

[2] The parties agree that Section 38.2–2212(A)'s definition of "cancellation" and "to cancel," supra, make those terms inapplicable to this case.

a policy of insurance on May 3, 1985. The policy period was three months, as the insured had requested in his application. Thereafter, at three-month intervals, the insured paid new premiums and the policy was renewed, until October, 1986. At that time, the insured wrote a check for the premium for the period November 3, 1986, to February 3, 1987. The check bounced. On December 19, 1986, the insured paid the premium by cashier's check and the policy was reinstated. The reinstatement notice made it clear that the policy period was from November 3, 1986, to February 3, 1987, the same as it would have been had the original check been honored. After that, the parties had no further contact. Specifically, the insurer never sent to the insured any type of renewal, nonrenewal, or cancellation notice; and the insured never sent to the insurer any premium payments or requests for renewal. On May 20, 1987, the insured was involved in an automobile accident and sought coverage under the policy. In holding that no coverage existed, the court stated:

> "Refusal to renew" is not a defined term. "Renewal" is defined as the issuance of a policy superseding at the end of the policy period a policy previously issued providing types and limits of coverage at least equal to those contained in the old policy. Virginia Code Section 38.2–2212(A). *Thus, a refusal to renew involves a rejection, or some deliberate action on the part of the insurer manifesting a decision to decline an extension of the coverage.*
>
> Here, Peninsula did not refuse to renew Snellings' policy. When policy § AL031045 expired on February 3, 1987, a new policy was not issued because Snellings did not pay the premium, did not apply for coverage, and, in fact, made no contact with Peninsula or its agent. The policy lapsed by its own terms, and no new policy was ever applied for or issued.

15 Va. Cir. at 237 (emphasis added).

With due respect to the *Snellings* court, I cannot agree with its holding.

Section 38.2–2212 requires that certain notices be given to an insured before the expiration date of an automobile insurance policy. The clear purpose of that section is to minimize the chance that an insurance policy will terminate without the knowledge of the insured and, in appropriate cases, that an opportunity for the insured to chal-

lenge such termination will be had before an appropriate official or body. Such purpose is clearly in furtherance of the public's need for all vehicles, so far as is practicable, to be covered by some type of liability insurance. *See, e.g.*, Title 46.2's provisions dealing with proof of financial responsibility (Va. Code Section 46.2–435) *et seq.* and liability policies (§ 46.2–472 *et seq.*).

Even more persuasive, however, is that unless an insurer is required to do *something* prior to the stated expiration date of a policy, § 38.2–2212(F)(1) and (2) have absolutely no meaning. If, as Allstate argues and *Snellings* holds, an insurer need do nothing at all prior to the expiration date of a policy, then § 38.2–2212(F)(1)'s provision that the other notice requirements of that section do not apply so long as the insurer manifests its willingness to renew the policy is nonsensical. Why must an insurer manifest a willingness to renew a policy in order to escape notice requirements when, according to Allstate and *Snellings*, those notice requirements do not apply anyway?

Similarly, why would the legislature provide that an insurer does not have to comply with § 38.2–2212's notice requirements when an insured notifies the insurer that he or she wishes to cancel a policy or that he or she does not wish to have a policy renewed (Section 38.2–2212(F)(2) if, as Allstate argues and *Snellings* holds, the insurer does not have to comply with those notice requirements even if the insured never tells the insurer anything?

It is my opinion that with respect to automobile insurance policies, the phrase "refusal to renew" includes all situations where an insurer does not renew a policy for any reason at all, and I now so hold. Accordingly, unless the facts of this case fit within one of the exceptions set out in § 38.2–2212(F), Allstate is liable for plaintiffs' damages here.

Section 38.2–2212(F)(1) exempts an insurer from the notice requirements of that section if the insurer has "manifested its willingness to renew by issuing or offering to issue a renewal policy . . . or has manifested its willingness to renew in writing to the insured." As was previously noted, the parties have stipulated that Allstate mailed a renewal notice to the plaintiffs on April 12, 1990, and a reminder notice on April 23, 1990. They have also stipulated that plaintiffs did not receive either notice. The question, then, is whether the "manifestation" called for in subsection (F)(1) must be received

by the insured or is complete upon mailing. I conclude that it is complete upon mailing.

In *Ampy v. Insurance Company*, 200 Va. 396, 105 S.E.2d 839 (1958), the insurer mailed a cancellation notice to the insured. At the time of mailing, the insurer's agent obtained from the post office the written receipt required under § 38.1–2208 (then § 38.1–381.1). The insured claimed that she never received the notice. In holding that the policy was cancelled, the Court stated:

> [I]t is not necessary to prove actual receipt of the cancellation notice. If the notice is mailed in accordance with the terms of the policy and the provisions of the statute, the notice of cancellation is effective.

200 Va. at 401.

Similarly, in *Riddick v. State Capital Insurance Company*, 271 F.2d 641 (4th Cir. 1959), which also involved a cancellation notice, the court held:

> The cancellation notice here complies in all respects with the requirements of the policy, so that, if properly addressed, its mailing effectively cancelled the insurance coverage as of the date specified in the notice. This is true whether or not the assured actually received the notice . . .

271 F.2d at 642–43.

In *Ampy* and *Riddick*, the courts were dealing with a statutory provision which required that if a notice was mailed, it had to be sent by registered or certified mail, or the insurer had to obtain a receipt for the mailing from the post office. In both cases, the courts held that as long as one of those requirements was met, notice was complete upon mailing.

In the case at bar, there is no requirement for a registered or certified mailing, or for obtaining a receipt upon mailing. All that is required is a "manifestation" of a willingness to renew. There is absolutely no reason to believe that the General Assembly intended to require more from an insurer under subsection (F)(1) of § 38.2–2212 than under the rest of that section. If anything, the opposite is true. accordingly, I hold that just as a notice of cancellation or refusal to renew may be sent to an insured by mail, a manifestation of an insurer's willingness to renew — a renewal offer — may also be sent by mail. Further, since subsection (F)(1) contains no require-

ment of registered or certified mail, nor a requirement that a receipt of mailing be obtained, I also hold that the manifestation may be sent to the insured by regular mail. Finally, since *Ampy* and *Riddick* hold that a notice of cancellation is complete upon mailing even if such notice is never received by the insured, I hold that mailing of the insurer's manifestation of its willingness to renew is also complete upon mailing. Accordingly, Allstate has fully complied with § 38.2–2212(F)(1), and plaintiffs' policy expired before the accident of June 2, 1990. Plaintiffs are not entitled to recover.